UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
TODD MIRABELLA,

                                                                                      Plaintiff,

                -against-

CORRECTION OFFICER KIENER; CORRECTION OFFICER VOSBURGH; CORRECTION OFFICER STACHEWICZ; CORRECTION OFFICER ROACHE; SERGEANT BROWN; SUPERINTENDENT DALE ARTUS; DEPUTY SUPERINTENDENT IN CHARGE OF SECURITY SETWART ECKERT; "D" BLOCK SERGEANT BROWN CAPTAIN JAMES GILMORE; LIEUTENANT INVESTIGATING MARCH 3, 2014 GRIEVANCE JOHN DOE #1; CORRECTION OFFICIALS ##1-20,

                                                                                      Defendants.
------------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

15 CV 142 (WMS)

Stoll, Glickman & Bellina, LLP
By: Nicholas Mindicino
475 Atlantic Ave., 3rd Floor
Brooklyn, NY 11217
(718) 852-3710 (phone)
(718) 852-3586 (fax)
NMindicino@stollglickman.com

INTRODUCTION

The New York Correctional Association, an organization with the statutorily mandated responsibility to report on the state of New York's correctional facilities, reported on Attica C.F. in November, 2014:

> "[M]ost consistently reported was that people convicted of sex offenses were targeted for abuse. Numerous people reported that security staff will assault people they identify as convicted of sex offenses, will 'burn' those individuals and force them to stay in their cells for several days, and/or will inform other incarcerated persons about people's crimes of conviction as a mechanism to encourage peer violence against those convicted of sex crimes. As one person most clearly articulated the issue: "there is 'vigilante justice' towards people convicted of sex offenses. Officers physically attack them; officers announce what they are locked up for; officers keep them locked in their cells, denying them the ability to go to the mess hall for breakfast, lunch, and dinner; and officers have other [incarcerated persons] attack them." Multiple people reported that people convicted of sex offenses are physically assaulted whenever they first arrive in Attica's C-block. As one person reported, 'anyone with a sex crime in C-block is assaulted [by COs] upon entering C-block and scared into not writing about it. COs also get other incarcerated persons to beat these people up and sometimes cut up.'"

See ¶ 56 of the First Amended Complaint ("FAC").

The New York State Attorney General's position is that such activities do not violate the Eighth Amendment to the United States Constitution. We disagree.

1

ARGUMENT

I. THE NAMED AND JOHN DOE OFFICERS ACTED WITH DELIBERATE INDIFFERENCE AND MALICIOUS INTENT TOWARDS THE SAFETY OF PLAINTIFF

   A. Fact Supporting Plaintiff's Claim

Plaintiff Todd Mirabella entered Attica Correctional Facility ("Attica C.F.") on February 24, 2014. FAC ¶ 16. When asked, plaintiff informed defendant correction officers that he was convicted of a sex crime involving minors, and added that his case was on appeal (plaintiff maintains his innocence). FAC ¶ 17. Thus began a pattern and plan of harassment that led to plaintiff being slashed on his face on April 19, 2014. FAC ¶ 29.

Between February 24 and April 19, the defendant correction officers: verbally abused, harassed and threatened him with violence and sexual assault, FAC ¶¶18-21, 25; told him that he (plaintiff) had a "hit" on him, FAC ¶25; put a hit on him, Id.; told him that he would soon be "fucked in the ass", FAC ¶19; physically assaulted him, FAC ¶¶ 17,21,22; denied him food, FAC ¶21; denied him a mattress to sleep on, FAC ¶18; denied him a shower, FAC ¶22; denied him access to his commissary, Id.; denied him access to the phone and use of mail, Id., FAC ¶27; denied him bible study, FAC ¶27; and denied him standard allowed items in his cell, FAC ¶27. Just days prior to being slashed in the face, plaintiff wrote to the sergeant in charge of his area of the cell block, twice. FAC ¶¶27-28, Exhibit A to Plaintiff's Original Complaint. The Sergeant refused to take any action to protect him. FAC ¶¶27-28.

Furthermore, plaintiff alleges that the defendants engaged in a joint venture and formed an agreement to violate his rights. FAC ¶ 39. Such a joint venture is not only evidenced by the aforementioned pattern and plan of harassment and threats, but by events that occurred (and did not occur) after he was slashed in the face by another inmate. Plaintiff alleges that while he was

being treated, his cell was intentionally left open by defendants, allowing valuable items from his cell to be stolen. FAC ¶32. When plaintiff made a claim for his items, Attica C.F. admitted that his cell "may not have been secured during the incident." FAC ¶33. Plaintiff alleges that defendant correction officers paid the inmate who assaulted him by allowing him to steal items from his cell. FAC ¶35. The inmate who slashed plaintiff was never charged or infracted. FAC ¶36.

The joint venture engaged in by defendants is also evidenced by the allegations that plaintiff's attempts to stop the threats and harassment prior to being slashed were ignored at best and treated with derision at worst. FAC ¶¶20, 22, 23, 27, 28 and 51. When plaintiff's family wrote to complain about the slashing, Captain Gilmore explained to them that it was not unusual for inmates convicted of such sex crimes to be targeted for assault, FAC ¶52. Yet, despite the foreseeability of the slashing, defendant correction officials at best did nothing to protect plaintiff from a foreseeable assault and many in fact encouraged and participated in the plan to assault him.

B. Legal Basis Supporting Plaintiff's Claim

The Eighth Amendment guarantees each prisoner that reasonable measures will be taken to ensure his safety. Farmer v. Brennan, 511 U.S. 825 at 857. "Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996). The deliberate indifference standard for liability has an objective and subjective element. Id. See also Ross v. Correction Officers John & Jane Does 1-5, 610 F. App'x 75, 77 (2d Cir. 2015).

The objective element requires that a "plaintiff must demonstrate that he is incarcerated

3

under conditions posing a substantial risk of serious harm." Id. The subjective test requires a plaintiff to demonstrate that "the prison official involved must have acted with a 'sufficiently culpable state of mind.'" Id. *citing* McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999). "Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient to make this showing." Id. *citing* Brock v. Wright, 315 F.3d 158, 164 (2d Cir.2003).

1. The objective element

The allegations in the FAC meet the objective element of the deliberate indifference test. As Captain Gilmore explained to plaintiff's family in his letter, the nature of plaintiff's particular criminal conviction made him a target for inmate abuse. FAC ¶52. That the nature of his crimes made him a target for abuse in the facility was known to the defendant officers. For example, when he first entered his housing unit he was asked by defendant correction officers what his crime was, and assaulted him when he told them it was a sexual crime. FAC ¶17. Moments after the assault, defendant Vosburgh, came to speak to him in his cell and told him he should kill himself. FAC ¶18. The next day, defendant Vosburgh came to his cell and warned that he would be "fucked in the ass." FAC ¶19. A John Doe sergeant spoke to plaintiff two days after arriving at Attica. He knew of the harassment that was already occurring and discussed it with him but did nothing to assist him. Indeed, he only further harassed plaintiff with his sarcasm about it. FAC ¶20. Finally, after he was moved to Officer Kiener's block ("D" block), plaintiff wrote to defendant D block Sergeant Brown that he believed that officers in Vosburgh's block communicated to D block officers that he was convicted of sex crimes in order to continue the threat of violence against him. Exhibit A to Plaintiff's Original Complaint.

Defendant Officer Stachewicz also knew of the threat against plaintiff. When two defendant John Doe correction officers assaulted plaintiff while defendant Vosburgh acted as a

4

lookout, plaintiff went to defendant Officer Stachewicz to ask him to write a report on the force used against him. Defendant Stachewicz refused, saying he did not "see" the assault. FAC ¶22

Defendant Officer Kiener knew of the threat against plaintiff. Indeed, just thirteen days prior to plaintiff being slashed, Kiener told plaintiff that he had a hit on him. FAC ¶25. Defendant Office Roche also knew of the threat against plaintiff. He assaulted plaintiff and threatened to kill him the day after Defendant Officer Kiener told plaintiff he had a hit on him. FAC ¶26. Though Officer Roche did not state his reason for assaulting him, since plaintiff was engaged in an innocuous and permissible activity, i.e. going to bible study, there could only be one reason, that he knew of plaintiff's charges. Furthermore, that defendant Officer Kiener published plaintiff's criminal charges to correction officers and inmates in his cell block area, it can easily be inferred that defendant Roche knew of the charges and the danger that the charges posed to him.

Defendant "D" Block Sergeant Brown also knew of the danger plaintiff was facing. First, he was in charge of the cell block (FAC ¶27) where defendant Kiener posted plaintiff's charges for the information of officers and inmates. Second, plaintiff wrote to him twice in the days preceding the slashing, explaining the increasing harassment and danger he was facing. FAC ¶¶27-28. Plaintiff received no response and it appeared that Defendant Sergeant Brown did nothing to alleviate the substantial danger plaintiff was facing. Id.

Courts have held that a claim for deliberate indifference may lie where a corrections officer identifies an inmate as being an informant or "snitch" in front of other inmates. Campbell v. Gardiner, 2014 WL 906160, at 4 (W.D.N.Y. 2014). "[D]ecisions in this Circuit have recognized that an inmate may incur the risk of physical harm at the hands of other inmates if he is labeled a 'snitch.'" Id. *citing* Allah v. Juchnewioz, 1999 WL 562100, at 3 (S.D.N.Y.1999).

5

An officer calling an inmate a "snitch" in the presence of other inmates "suggests deliberate conduct that creates a real risk of physical injury. Such conduct by an officer is capable of satisfying both the objective and subjective prongs." Cruz v. City of New York, 2015 WL 464021, at 4 (S.D.N.Y. Jan. 30, 2015).

Courts in this district also recognize that a prisoner convicted of certain sex offenses may be in grave danger if the prison population learns of the charges. "[A] jury can assess whether the municipality's policymakers responsible for attending to prisoner safety knew or should have known that sex offense prisoners or detainees faced a substantial risk of serious harm…" Arnold v. Cnty. of Nassau, 89 F. Supp. 2d 285, 305 (E.D.N.Y. 2000) *vacated on other grounds*, 252 F.3d 599 (2d Cir. 2001).  In Montero v. Crusie, 153 F. Supp. 2d 368 at 377 (S.D.N.Y. 2001), the plaintiff alleged that defendant correction officers "spread rumors" that plaintiff "was gay, was a child molester, and was a rapist." The court ruled "[i]n the prison context in which plaintiff was required to live, one can think of few acts that could be more likely to lead to physical injury than spreading rumors of homosexuality." Id.  This court also has acknowledged the security risk in being labelled a snitch and child molester in a prison setting. Snyder v. McGinnis, 2004 WL 1949472 at 11 (W.D.N.Y.  J. Skretny, 2004).

At bottom, plaintiff has adequately pled that he was incarcerated under conditions posing a substantial risk of serious harm to him personally.  The steady pattern of verbal and physical harassment directed at him because he was convicted of a sexual offense involving a minor, his beseeching of defendant Sergeant Brown for help, Captain Gilmore's letter, and the Correction Association's concern about assaults on sex offenders at Attica C.F. all indicate that indeed, the environment created by defendants posed a substantial risk of serious harm to the plaintiff himself.  Defendants' failure to protect him against the direct threat he faced through their

6

actions caused his attack on April 19, 2014.

2. The subjective element

The FAC also pleads sufficient facts to show that each of the individual defendants acted with a sufficiently culpable state of mind. McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999). Indeed, plaintiff alleges that the harassment, abuse, threats and ultimately, the communication of plaintiff's charges by defendants Kiener, Vosburgh, Stachewicz and Roache, as well as the numerous defendant John Doe officers, was a purposeful, intentional and malicious plan to cause the injury of plaintiff. Each of these defendants are alleged to have participated in the plan and facilitated the slashing of plaintiff by purposefully creating an environment that led to the assault. Though we believe that the defendant correction officers knew he would be harmed and which prisoner would assault him, "[i]n order to impose liability, a plaintiff is not required to show that the prison official actually believed the harm would occur but only that the official was aware of a substantial risk of serious harm… An official cannot escape liability simply because he was unaware that the inmate was 'likely to be assaulted by the specific prisoner who eventually committed the assault.'" Corbett v. Kelly, 2000 WL 1335749, at 4-5 (W.D.N.Y., 2000) *citing* Farmer v. Brennan, 511 U.S. 825 (1994).

As to defendant "D" Block Sergeant Brown, plaintiff has also alleged specific allegations demonstrating his deliberate indifference to plaintiff's serious risk of serious harm. "An inmate's advance notification to prison officials of a risk of harm is not a *sine qua non* for liability but may be a factor to show that the officials had knowledge of the risk." Corbett at 4, c*iting* Farmer at 848. In addition to plaintiff's two letters, it is noteworthy that defendant Brown was in charge of plaintiff's cell block area. FAC ¶27. It was defendant Brown's responsibility to understand what was happening in his cell block area, and to redress problems. Id. and Exhibit A to

7

Plaintiff's Original Complaint. In his cell block area, defendant Kiener posted the printout of plaintiff's charges for officers and inmates to see. FAC ¶27. In fact, all the activities alleged in FAC ¶¶24-28 happened in his cell block area.

To satisfy the subjective element, a plaintiff must show that the prison official had knowledge of the serious risk of serious harm the plaintiff encountered, and that despite such knowledge the official failed to take protective measure. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620-21 (2d Cir. 1996). Knowledge can be inferred from the facts and circumstances, however, and in such a case where an inference can be drawn, the case should go to a jury. Id. at 621. Given these facts and the letters plaintiff sent him, it can, at this stage of the litigation, be inferred that defendant Brown had knowledge of the substantial risk of harm plaintiff faced. Plaintiff further alleges that defendant Brown failed to take any protective measures, despite such knowledge. FAC ¶28.

Disingenuously at best (mendaciously at worst), defendants state that "there is no allegation that any of the defendants were aware of any specific threat against plaintiff". As described above, Kiener, Vosburgh, Stachewicz and Roache all knew about the specific threat because they purposefully created the specific threat that the plaintiff faced. After plaintiff's detailed recitation of factual allegations, he pleads in his First Cause of Action:

> 44. By initiating a pattern of harassment, including assaulting him, threatening him, encouraging inmates to assault him, publishing his particular charges to inmates which is known by correction officers to cause heightened danger to such convicts, defendant officers created an environment that put him in serious danger of serious bodily harm.
>
> 45. Defendants knew that plaintiff was in serious risk of harm, they in large

part caused the danger to him, and they disregarded the substantial risk they knew of and placed him in. They acted with malicious intent and/or deliberate indifference and failed to protect him from substantial risk of harm to his person and are liable to plaintiff under 42 U.S.C. §1983.

In light of the foregoing, plaintiff respectfully submits that defendants' motion to dismiss the claims against defendants Kiener, Vosburgh, Stachewicz, Roache and Brown should be denied.

II.     PLAINTIFF HAS PLED A PLAUSIBLE AND ACTIONABLE FAILURE TO SUPERVISE CLAIM AGAINST THE SUPERVISORY DEFENDANTS

In 2012, in a motion that AAG George Michael Zimmerman himself filed, Judge Skretny wrote:

> The Second Circuit has not yet explicitly recognized this split among the district courts. In a recent unpublished decision, however, the Court quoted *Iqbal* 's pleading requirement with respect to government officials, but nonetheless favorably cited *Colon* in determining that dismissal of the amended complaint was warranted where, *inter alia*, there was "no allegation that the [defendant] 'failed to remedy the wrong' once being informed of [the plaintiff's] assault." *LaMagna v. Brown,* 2012 WL 1109696, 1–2 (2d Cir., 2012)

Stresing v. Agostinoni, 2012 WL 2405240, at 4 (W.D.N.Y. J. Skretny, 2012).  Pointing to no new caselaw on the subject (and, in fact, entirely ignoring post-Bellamy caselaw rejecting their position) the Attorney General's office, once again, asks this court to hold that a supervisor who 1) fails to remedy a constitutional violation after notice; or 2) acts in a manner constituting gross negligence in the management of subordinates responsible for the violation; or 3) exhibits deliberate indifference by failing to act on information that unconstitutional acts were occurring, should not be held liable for constitutional violations.  Clearly, the argument fails.

9

Time and again, district courts have rejected the case cited to by defendants, Bellamy v. Mount Vernon Hosp., 2009 WL 1835939 (S.D.N.Y. 2009). Referring to the rejection of Bellamy as the "majority view", just a few months ago the Northern District held in favor of a plaintiff relying on the Second Circuit's holding on supervisory liability in Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995). Berman v. Durkin, 2015 WL 1481769, at 7 (N.D.N.Y. Mar. 31, 2015). *See also* Vazquez-Mentado v. Buitron, 995 F. Supp. 2d 93, 97 (N.D.N.Y. 2014). The Eastern District also recently held "all five Colon factors survive." Cano v. City of New York, 44 F. Supp. 3d 324, 336 (E.D.N.Y. 2014). The Southern District too, has rejected the holding of Bellamy. Phillip v. Schriro, 2014 WL 4184816, at 4 (S.D.N.Y. Aug. 22, 2014). Colon v. Coughlin is the law of the Second Circuit, and plaintiff respectfully submits it is the law that this court must follow.

Colon held that a supervisory officials may be held liable for constitutional violations where:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Defendants devote many pages to arguing that the sending of one letter is not enough to establish supervisory liability, while also pointing to caselaw that suggests it is. However, here there is much more notice than one sent letter.

First, we note that plaintiff sent defendant Sergeant Brown two letters prior to the slashing and warning of the increased threat he was facing, defendant Superintendent Dale Artus,

10

received a grievance.  In addition, defendants make much of the fact that plaintiff did not plead that defendant Sergeant Brown actually "received the letter".  Indeed, we did not plead a fact that we cannot possibly have personal knowledge of at this stage of the litigation – unless Sergeant Brown had done something about it, which we have pled he did not.  However, we submit that it can be reasonably inferred for pleading purposes that a letter sent from one person to another inside the same facility was received by the intended recipient.  Sioleski v. McGrain, 2012 WL 6052158, at *1 (W.D.N.Y., J. Skretny, 2012).    Indeed, the Western District of New York has just ruled on this issue, stating:

> Grullon suggests that, at the pleading stage, a prison supervisory official who actually receives a letter or appeal referencing an ongoing constitutional violation will be deemed to be personally involved in the underlying violation, unless it is clear that he took "appropriate action" to address the violation:
>
> "At the pleading stage, even if [inmate] Grullon had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference—if his amended complaint contained factual allegations indicating that the Letter was sent to the Warden at an appropriate address and by appropriate means—that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which Grullon complained. It is of course possible that the Warden read the Letter and took appropriate action or that an administrative procedure was in place by which the Warden himself would not have received the Letter addressed to him; but those are potential factual issues as to personal involvement that likely cannot be resolved without development of a factual record."

Elder v. McCarthy, 2015 WL 5254290, at 6 (W.D.N.Y. Sept. 9, 2015).  The Attorney General's position, that supervisors can throw away urgent letters from inmates suffering threats and assaults and not act on them or respond to them with impunity because the prisoner cannot state as fact that the supervisor "received" the letter would surely create terrible incentives for supervisory staff and inmate pleadings.  We therefore respectfully submit that the court reject

11

this argument.

Furthermore, as to defendant Sergeant Brown specifically, as discussed *infra*, the two letters sent to him by plaintiff must be understood in the context that he was the sergeant in charge of his cell block area. Sergeant Brown was no ivory tower supervisor but the person located at the cell block area and responsible for it. Presumably, it was his responsibility to report any problems to the higher ups. Moreover, in the letters plaintiff describes that he had previously filed a grievance, but did not follow up because he did not "want trouble", a further red flag that safety and security are at risk. In addition to the letters, defendants Brown and Artus, and indeed all the supervisory defendants were on notice of the issues that led ultimately to the slashing of plaintiff. FAC ¶¶47-62. Under the Colon and indeed, even under the Bellamy analysis, each of these defendants "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"

### III. THE SUPERVISORY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE RIGHT THEY VIOLATED WAS CLEARLY ESTABLISHED

The Attorney General argues that supervisors who are grossly negligent or deliberately indifferent to their subordinates' actions that violate clearly established constitutional rights should be shielded from liability. Plaintiff disagrees. The qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014). Here the right to be free from cruel and unusual punishment by prison guards facilitating the assault that took place on plaintiff is, we believe, clearly established. In Raspardo v. Carlone, 770 F.3d 97 (2d Cir. 2014), the court acknowledged that supervisory gross negligence is constitutionally actionable, stating "A supervisor is protected by qualified immunity so long as reasonable officials could disagree about whether the

supervisor's action was grossly negligent in light of clearly established law." Id. at 116-117. In Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002), the court found "We have held that a supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." Id. at 126. "Further, a supervisor can be held liable when he or she has actual or constructive notice of unconstitutional practices, but similarly acted with gross negligence or deliberate indifference in failing to act. Such a supervisor may not escape the consequences of his or her failure to act by pleading the doctrine of qualified immunity." Groves v. Davis, 2014 WL 4684998, at 14 (N.D.N.Y., 2014). *See also* Mosley v. Woodly, 2013 WL 5347272, at 7 (N.D.N.Y., 2013).

In the section 1983 sexual harassment case against former Assembly member Vito Lopez, Speaker of the Assembly Sheldon Silver was denied qualified immunity when, as a supervising official, he failed to act on the complaints of women employed by the Assembly.

> First, Silver contends that the right at issue is the right to an investigation, but this argument misconstrues the nature of Plaintiffs' complaint. Plaintiffs are not claiming the right to a process, they are claiming the right to a result—a sexual harassment-free workplace—and under the well-defined law of the Second Circuit, they were entitled to one. Plaintiffs allege that Silver was aware of Lopez's pattern of behavior, that Silver knew of his obligation to take corrective action, but that he instead permitted Lopez to continue unchecked. No reasonable official (and in this case a lawyer) could have believed that turning a blind eye to Lopez's misconduct was consistent with clearly established law. In fact, an official's failure to remedy known sexual harassment complaints has defeated claims of qualified immunity in the past.

Burhans v. Lopez, 24 F. Supp. 3d 375, 384-85 (S.D.N.Y. 2014)

In an even more recent Southern District of New York case, supervisors claimed they

13

were entitled to qualified immunity because it was unclear from the caselaw whether they could be held individually liable.  The court denied the claim, stating:  "The fact that the Second Circuit has not ruled on whether supervisors at public agencies may be found individually liable under the FMLA, and that there is a split among the other circuits, does not make Deng's right to not be retaliated against for attempting to take FMLA leave any less clearly established. That is the only right that matters when determining the existence of qualified immunity."  <u>Ren Yuan Deng v. New York State Office of Mental Health</u>, 2015 WL 221046, at 19 (S.D.N.Y. Jan. 15, 2015).

  Finally, we note that defendants do not even challenge the fact that the third element of the <u>Colon</u> standard, to wit, "that the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom", is not clearly established.  This would clearly apply to each of the supervisors here above Sergeant Brown.

  For all the foregoing reasons, defendants' motion to dismiss should be denied in total.

DATED:  Brooklyn, NY
      October 15, 2015

          STOLL, GLICKMAN & BELLINA, LLP

        BY: _____
          Nicholas Mindicino
          Attorney for Plaintiff
          475 Atlantic Ave. 3rd flr.
          Brooklyn, NY 11217
          (718)852-3710
          NMindicino@stollglickman.com