UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TODD MIRABELLA,

                            Plaintiff,

        v.                                                          **DECISION AND ORDER**
                                                                    15-CV-142S
CORRECTION OFFICER O'KEENAN, et al.,

                            Defendants.

## I. INTRODUCTION

Plaintiff, Todd Mirabella, is an inmate in the custody of the State of New York Department of Corrections and Community Supervision, housed at Attica Correctional Facility ("Attica").   He brings this action against employees of Attica, Correctional Officers Kiener, Roache, Stachewicz, and Vosburgh (the "Correctional Officer Defendants"), as well as Sergeant Brown, Captain Gilmore, Deputy Superintendent Eckert, and Superintendent Artus (the "Supervisory Defendants"), alleging violations of his Eighth Amendment rights under 42 U.S.C. § 1983 during his incarceration.   All Defendants move to dismiss the Amended Complaint[1] under Federal Rule of Civil Procedure 12 (b)(6), contending that Mirabella fails to allege a violation of constitutional rights.   For the following reasons, the motion is denied as to the claims against Defendants Correctional Officer Kiener and Sergeant Brown, and granted in all other respects.

---

[1] Mirabella filed an initial complaint on February 13, 2015.  (Docket No. 1, the "Original Complaint".)  After Defendants moved to dismiss on August 21, 2015 (Docket No. 13), Plaintiff filed the Amended Complaint, which is the operative pleading document.  (Docket No. 17, the "Amended Complaint".)

## II. BACKGROUND[2]

On February 24, 2014, Mirabella transferred into Attica from Elmira Correctional Facility.  (Am. Compl. at ¶ 16.)  When Mirabella arrived, an unnamed officer asked him why he was incarcerated.  (Id. at ¶ 17.)  Mirabella told the unnamed officer he was convicted of a sex crime involving minors; the unnamed correctional officer then hit Mirabella on the head and another unnamed officer hit Mirabella on the back of the legs with a baton.  (Id.)

Shortly after this incident, on the same day as Mirabella's arrival at Attica, Defendant Correctional Officer Vosburgh told Mirabella to "kill himself," and the next day "went to [Mirabella]'s cell and asked [Mirabella] why he had not killed himself yet."  (Id. at ¶ 18.)  He also asked Mirabella if he had ever been sodomized, and "threatened that he would be soon."  (Id. at ¶ 9.)  On February 26, 2014, Vosburgh came to Mirabella's cell, this time Vosburgh "threatened [Mirabella] again and attempted to strike him through [his] cell window."  (Id. ¶ 20.)  And, on February 28, 2014, Mirabella was "assaulted" by two unnamed correctional officers while Vosburgh "looked on and acted as a lookout," and that this attack "caus[ed] him to feel serious pain."  (Id. ¶ 22.)  These same officers denied Mirabella access to food and a shower.  (Id.)  Mirabella "demanded" that the officer at the desk, Defendant Correctional Officer Stachewicz, report this incident, but Stachewicz refused to do so, stating that he had not seen anything.  (Id.)  On March 3, 2014, Mirabella filed a grievance reporting "the harassment and assaults."  (Id. ¶ 23.)

Mirabella was eventually moved to D block.  (Id. ¶ 24.)  On April 6, 2014,

---

[2] The following facts are taken from the Amended Complaint and accepted as true for the purposes of this motion.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Defendant Correctional Officer Kiener "conspicuously published [Mirabella]'s charges to certain inmates and other correction officers in the area of his cell block, in an effort to facilitate and cause an attack on [Mirabella]." (Id. ¶ 25.)  Kiener also told Mirabella that he had a "hit" on him.  (Id.)

During this period, Mirabella alleges that unnamed officers harassed him, and that they denied him access to "standard allowed items in his cell, denied him bible study and the chow hall, denied his weekly phone call, threatened and accosted" him. (Id. at ¶ 27.)   And on April 7, 2014, Defendant Correctional Officer Roache "unnecessarily and wantonly assaulted plaintiff while he was walking to bible study. Defendant Roache threatened to kill plaintiff if he reported the assault." (Id. ¶ 26.)

Mirabella wrote two letters to Supervisory Defendant Sergeant Brown, on April 13 and 17, 2014, "asking for help in stopping the harassment" by the Correctional Officers. (Id. at ¶ 27; see also Exh. A to the Original Complaint.)  In the April 13, 2014 letter, Mirabella noted some of the issues that he details in the Amended Complaint.  Without naming the specific officers, he states that a correctional officer threatened to kill him, that another correctional officer put a "hit" on him, and that he has been denied of certain privileges.  (Exh. A to the Original Complaint at p. 3.)  He finishes the letter by stating that he does not seek to be moved, but is "asking you [Sergeant Brown] to simply request that the COs [correctional officers] lay off me and move on to better things." (Id.)  In the April 17, 2014 letter, Mirabella further specified that "Officer K," presumably Defendant Kiener, "has effectively put a 'hit' on me by printing out the incidentals of my case and providing that info to several 39 company inmates for the sole reason of inciting violence." (Id. at p. 5.)  Mirabella again notes that he does not

intend to file a grievance, but hopes that he, Sergeant Brown, and Kiener "can perhaps discuss this and smooth it all out." (Id.)  Sergeant Brown did not respond to Mirabella's letters.

On April 19, 2014, an inmate slashed Mirabella's face with a sharp object while they were in the yard in a "wholly unprovoked attack." (Id. ¶ 29.)  The incident resulted in in a 7.5 inch slash to the left side of Mirabella's face that required 27 sutures.  (Id. at ¶ 29.)  Mirabella now has a permanent scar on the left side of his face.  (Id. at ¶ 37.)  Mirabella alleges that, although metal detectors were "readily available" at Attica, "inmates were not required to go through [metal detectors] to enter and exit the recreation yard, nor were inmates patted down or frisked.  Such searches would have likely prevented [Mirabella's] injuries." (Id. at ¶ 30.)

Mirabella alleges that Defendants "engaged in a joint venture and formed an agreement to violate [Mirabella]'s rights." (Id. at ¶ 39.)  As evidence of this "joint venture," Mirabella alleges that his cell was intentionally left open while he was being treated for his injury, and that this was to facilitate payment (e.g., the valuable items in Mirabella's cell) to the inmates who "initiate[d] and execute[d] an attack on" Mirabella.[3] (Id. at ¶¶ 32-35.)  Further, the inmate who slashed Mirabella was not disciplined for the incident.  (Id. at ¶ 36.)  Mirabella also points to a letter from Supervisory Defendant Captain Gilmore's response to a letter sent by Mirabella's family after the slashing, wherein Captain Gilmore states that it was "not unusual" for inmates like Mirabella to have "problems" with other inmates "considering the nature of his crimes." (Id. at ¶ 52, see also Exh. B to the Original Complaint.)

---

[3] Mirabella alleges that he was reimbursed in full (less a few food items) for the property taken from his cell.  (Id. at ¶ 34.)

## III. DISCUSSION

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12 (b)(6), this Court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiff's favor. ATSI Commc'ns, Inc., 493 F.3d at 98. To survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This assumption of truth applies only to factual allegations and is inapplicable to legal conclusions. Iqbal, 556 U.S. at 678.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Eighth Amendment. To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting "under color of state law" and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004). "In addition, a prerequisite for liability under § 1983 is 'personal involvement' by the defendants in the alleged constitutional deprivation." Snyder v. McGinnis, No. 03-CV-0902E, 2004 WL 1949472, at *1 (W.D.N.Y. Sept. 2, 2004) (citing Spencer v. Doe, 139 F.3d 107, 112 (2d Cir. 1998)).

**A.     Correctional Officer Kiener**

Mirabella alleges that Defendant Kiener violated his Eighth Amendment rights by "publish[ing] plaintiff's charges to certain inmates and other correction officers . . . in an effort to facilitate and cause an attack on plaintiff."  (Am. Compl. at ¶ 25.)  Mirabella further alleges that Kiener told him that he had a "hit" on him, and that Mirabella was slashed in an "unprovoked attack" less than two weeks later.  (Am. Compl. at ¶¶ 25, 29.)

The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody."  Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996); see also Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  Specifically, "[p]rison officials have a duty to protect prisoners from violence at the hands of other inmates since being violently assaulted in prison is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'"  Lee v. Artuz, No. 96-CV-8604, 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting Farmer, 511 U.S. at 834 (citation omitted)).  Although "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety," prison officials are liable under the Eighth Amendment for exposing a prisoner to a constitutionally intolerable risk of violence. See Farmer, 511 U.S. at 834; Morales v. N.Y. State Dep't of Corr., 842 F.2d 27, 30 (2d Cir. 1988).

"In Farmer, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation."  Hines v. Lacy, 189 F.3d 460 (2d Cir. 1999).  The objective

first prong requires that the inmate must have been "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. The subjective second prong requires that the prison official possessed sufficient culpable intent, specifically, "knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." See Hayes, 84 F.3d at 620 (citing Farmer, 511 U.S. at 834); see also Price v. Oropallo, No. 9:13-CV-0563 GTS/TWD, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014) (explaining that to establish deliberate indifference, "a plaintiff must prove that the defendant official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety").

Making all inferences in Mirabella's favor, he has pleaded sufficient allegations against Kiener, which, if substantiated, could establish an Eighth Amendment violation. As to the first prong, Mirabella's allegations regarding the slashing incident indicate that he was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. As to the second prong, "[a] prisoner can state a claim under the Eighth Amendment against a corrections officer who spreads malicious rumors about him if the rumors 'incited other inmates to assault [the plaintiff] . . . , thereby placing him at grave risk of physical harm.'" Bouknight v. Shaw, 08 Civ. 5187, 2009 WL 969932, at *4 (S.D.N.Y. Apr.6, 2009) (quoting Young v. Coughlin, No. 93-cv-262 (DLC), 1998 WL 32518, at *7 (S.D.N.Y. Jan. 29, 1998)). Courts in this Circuit have previously recognized that "a claim for deliberate indifference may lie where a corrections officer identifies an inmate as being an informant or 'snitch' in front of other inmates." Campbell v. Gardiner, 12 Civ. 6003, 2014 WL 906160, at *4 (W.D.N.Y. Mar. 7, 2014) (collecting cases). Although the precedent for identifying a prisoner as a sex offender or

child molester is less well-defined, Mirabella's allegations are sufficient to plead that Kiener's alleged "publish[ing]" of Mirabella's crime made Mirabella a target, much the same as if Kiener had called him a snitch.  See Arnold v. Cty. of Nassau, 252 F.3d 599, 601 (2d Cir. 2001) (acknowledging policy of segregating "inmates charged with sex crimes . . . from the general prison population because they are at greater risk of assault by other inmates"); see also Quezada v. Fischer, No. 913CV00885MADTWD, 2016 WL 1118451, at *2 (N.D.N.Y. Mar. 22, 2016) (denying motion to dismiss Eighth Amendment claim under § 1983 where defendant encouraged another inmate to physically assault plaintiff, and such an assault took place).

Mirabella alleges that Kiener acted intentionally to incite inmates to attack him, and acknowledged as much by telling Mirabella that he had a "hit" on him.  "Intentionally exposing an inmate to the risk of harm, as alleged here, with no penological purpose is indicative of deliberate indifference to the inmate's safety at best and manifests an intent to harm the inmate at worst, thus constituting cruel and unusual punishment in violation of the 8th amendment to the U.S. Constitution."  Medina v. Whitehead, No. 3:13-CV-885 VLB, 2014 WL 3697886, at *2 (D. Conn. July 24, 2014) (finding allegations that defendant "told inmates in the plaintiff's housing unit that he was a pedophile and several inmates that the plaintiff was a 'snitch' and that he should be punched in the mouth for 'snitching'" sufficient to demonstrate that defendant "was aware of the source of the harm to which [plaintiff] had been subjected" and sufficient "to state a claim for failure to protect"); see also Young, 1998 WL 32518, at *7 (correctional officer's comments suggesting that plaintiff was a homosexual and directing other inmates to sexually harass and "jump" him could support an Eighth Amendment excessive force

claim if they incited other inmates to assault plaintiff, placing him at grave risk of assault).

Kiener argues that there is no allegation he had contact with the inmate prior to the attack, or that he knew the attack would happen before it occurred. This argument fails. See Medina v. Whitehead, 2014 WL 3697886, at *2 (denying motion to dismiss where "plaintiff has alleged that, as a result of the defendant's comments labeling him as a snitch and suggesting that he should be assaulted, four inmates tried to fight with him" despite failure to allege any contact or link between defendant and attackers). "A supported allegation that a correctional official made statements intending to incite inmates to attack another inmate may state a claim under the Eighth or Fourteenth Amendment." Johnson v. Philling, No. CV 12-2523-PHX-RCB (SPL), 2013 WL 2244593, at *3 (D. Ariz. May 21, 2013) (citing Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992)); see also Sanders v. Davis, No. 11-cv-249-JPG, 2012 WL 43205, at *2 (S.D. Ill. Jan. 9, 2012) (purposely inciting an inmate to attack another inmate creates a threat to bodily harm sufficient to implicate plaintiff's Eighth Amendment rights). Under these circumstances, even if the slashing incident were not linked to Kiener's actions, Mirabella's claim would still stand. Medina v. Black, No. 3:15-CV-1371 (VLB), 2016 WL 386030, at *6 (D. Conn. Feb. 1, 2016) (denying motion to dismiss where "plaintiff allege[d] that the defendants themselves were inciting other inmates to attack the plaintiff and even offered a bounty for any inmate who attacked him" even though "no inmate accepted the offer"); see also Dawes v. Walker, 239 F.3d 489, 494 (2d Cir. 2001) (affirming dismissal of failure to protect claim, but noting that plaintiff had failed to allege assault or credible threat of assault by other inmates), overruled on other

9

grounds, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002).

Mirabella's allegations that Kiener "conspicuously published plaintiff's charges" to inmates on the cell block, and that Kiener told Mirabella he had a "hit" on him (Am. Compl. at ¶ 25), suggest deliberate conduct that created a real risk of physical injury. And Mirabella actually suffered an attack, resulting in an injury and a permanent facial scar.  These allegations satisfy both the objective and subjective prongs of the <u>Farmer</u> test.  Accordingly, Kiener's motion to dismiss the claims against him is denied.

**B.      Defendant Sergeant Brown**

Mirabella alleges that Sergeant Brown also violated his constitutional rights by failing to respond to his letters notifying him of Kiener's actions, expressing fear for his safety, and seeking Sergeant Brown's assistance.  In Mirabella's second letter, sent just two days before Mirabella's face was slashed, Mirabella told Sergeant Brown that Defendant Kiener "has effectively put a 'hit' on me by printing out the incidentals of my case and providing that info to several 39 company inmates for the sole reason of inciting violence."  (Exh. A to the Original Complaint at p. 5.)  Mirabella asked that Sergeant Brown "[p]lease get involved now."  (<u>Id.</u>)  Mirabella further alleges that Sergeant Brown was the D Block supervisor, and in charge of Kiener, a D Block officer. (Am. Compl. at ¶¶ 10, 27.)

1.   <u>Personal Involvement</u>

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."  <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996).   Rather, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983." <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006) (internal quotation marks omitted).  In <u>Turkmen v. Hasty</u>, the Second Circuit addressed the issue of personal involvement for supervisory defendants, holding that supervisory liability is permissible only where the defendant's conduct itself "reflects the elements of the underlying constitutional tort."  789 F.3d 218, 250 (2d Cir. 2015).  Mirabella's claim, which is governed by the deliberate-indifference standard, "therefore survives so long as [Mirabella] plausibly plead[s] that the conditions were sufficiently serious, and [Sergeant Brown] 'kn[e]w of, and disregard[ed], an excessive risk to [Mirabella's] health or safety.'"  <u>Id.</u> (quoting <u>Walker v. Schult</u>, 717 F.3d 119, 125 (2d Cir. 2013)).  In other words, the claim can survive a motion to dismiss only if Mirabella plausibly alleges facts showing that Sergeant Brown also acted with deliberate indifference, both to Kiener's actions and the resulting threat to Mirabella.  <u>See id.</u>; <u>see also</u> <u>Farmer</u>, 511 U.S. at 834, 847.

Sergeant Brown argues that Mirabella has failed to allege that he actually received the letters that Mirabella sent to him.  However, the Second Circuit has held that:

> At the pleading stage, even if [plaintiff] had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference—if his amended complaint contained factual allegations indicating that the Letter was sent to the [supervisory defendant] at an appropriate address and by appropriate means—that the [supervisory defendant] in fact received the Letter, read it, and thereby became aware of the alleged conditions of which [plaintiff] complained.

<u>Grullon v. City of New Haven</u>, 720 F.3d 133, 141 (2d Cir. 2013).  Based on the allegations of the Amended Complaint, including the text of the letter and Sergeant Brown's position within the cell block, this Court will draw "the reasonable inference . . .

that [Sergeant Brown] in fact received the Letter, read it, and thereby became aware of" the alleged threat to Mirabella's safety.  Id.

Sergeant Brown further argues that "an allegation that a supervisory official ignored a letter protesting past unconstitutional conduct is, without more, [in]sufficient to state a claim that the official was 'personally involved' in the unconstitutional conduct." Platt v. Inc. Vill. of Southampton, 391 F. App'x 62, 65 (2d Cir. 2010); compare Grullon, 720 F.3d at 141.  However, the Second Circuit precedent cited by Sergeant Brown in favor of this position is distinguishable.  In some instances, the alleged unconstitutional conduct had already occurred, and the prisoner was seeking redress for a past violation.  See Wingate v. Horn, No. 07-2521-PR, 2009 WL 320182, at *2 (2d Cir. Feb. 10, 2009) (no personal involvement for supervisory defendants who were not aware of alleged denial of voting rights prior to election day and failed to respond to letters sent after election day).  In others, the supervisory defendant responded to the letter in an appropriate way.  See Goris v. Breslin, 402 F. App'x 582, 584 (2d Cir. 2010) (no personal involvement for doctor who "promptly referred [plainitff's letters] to other individuals for investigation and response"); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (prison official who received letter from inmate and forwarded it to subordinate for investigation and response was not personally involved in depriving inmate of constitutional right).  Mirabella's letter did not request that Sergeant Brown address past wrongs.  Instead he wrote out of fear that his safety was in imminent danger due to Kiener's actions—a fear that was realized just two days after sending the letter, when Mirabella's face was slashed.  And, as alleged in the Amended Complaint, Sergeant Brown failed to respond or delegate a response.

As discussed above, Mirabella has alleged that the conditions after Kiener made the charges known were sufficiently serious, ultimately resulting in an attack and a permanent scar to Mirabella's face.   Further, Mirabella alleges that he informed Sergeant Brown of Kiener's actions and of the threat to his safety, and requested Sergeant Brown's intervention.  Finally, Mirabella alleges that, despite Mirabella's timely notification, Sergeant Brown failed to act, and Mirabella was attacked two days later. Accepting these allegations to be true, and making all inferences in Mirabella's favor, this Court finds that the Amended Complaint meets the standard set forth in Turkmen and sufficiently alleges Sergeant Brown's personal involvement.

2. Qualified Immunity

Sergeant Brown contends that, even if this Court finds Mirabella has alleged personal involvement, the claims against him should nevertheless be dismissed on the basis of qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Messerschmidt v. Millender, 132 S. Ct. 1235, 1244, 182 L. Ed. 2d 47 (2012) (internal citations omitted).   "Thus, qualified immunity protects government officials when they make 'reasonable mistakes' about the legality of their actions." Doninger v. Niehoff, 642 F.3d 334, 353 (2d Cir. 2011).  "'[T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law. . . .  [I]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized.'" Mangino v. Inc. Vill. of Patchogue, 808 F.3d 951, 959 (2d Cir. 2015) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d

271 (1986)).

However, a defendant asserting a qualified immunity defense on a motion to dismiss "faces a formidable hurdle . . . and is usually not successful." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 191-92 (2d Cir. 2006) (internal citation omitted).  At the motion to dismiss stage, this defense will succeed only where entitlement to qualified immunity can be established "based [solely] on facts appearing on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  "Consequently, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept that the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (internal citation and punctuation omitted); see also Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013) ("defendants moving to dismiss a suit by reason of qualified immunity would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c)").

Limiting the analysis to the Amended Complaint, taking all of Mirabella's alleged facts as true, and drawing all reasonable inferences in his favor, this Court cannot conclude as a matter of law that Sergeant Brown is entitled to immunity.  If Sergeant Brown received the request for help, knew of the threat to Mirabella's safety, and failed to take action, a jury could find that reasonable sergeants would agree that such a failure was unconstitutional, and was, therefore, objectively unreasonable.  Accordingly, Sergeant Brown's motion to dismiss the claims against him must be denied at this stage

in the litigation.[4]

## C.   Correctional Officers Vosburgh, Stachewicz, and Roache

As to the remaining Correctional Officer Defendants, Mirabella's allegations are lacking.   Although the statements attributed to Vosburgh are disgusting and inexcusable, they do not rise to the level of a violation of constitutional rights.   "It is well-settled that words alone, however violent, are not held to amount to an assault, or to constitute cruel and unusual punishment under the Eighth Amendment."   Hooks v. Howard, No. 907-CV-0724 TJM/RFT, 2010 WL 1235236, at *12 (N.D.N.Y. Mar. 30, 2010) (citing Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973), cert. denied, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973)).   Accordingly, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."   Moncrieffe v. Witbeck, 97-CV-253 (NAM/DRH), 2000 WL 949457, *3 (N.D.N.Y. Jun. 29, 2000) (quoting Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)); see also Cossey v. Killacky, 04-CV-6305CJS(P), 2004 WL 1960163, *2 (W.D.N.Y. Aug.16, 2004) (citing cases).

---

[4] This Court is not persuaded by Sergeant Brown's contention that the law regarding supervisory liability in this Circuit is currently so unsettled that Sergeant Brown could not assess whether his actions "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known."   See Messerschmidt, 132 S. Ct. at 1244.   This argument would, in effect, allow qualified immunity to entirely negate supervisory liability under § 1983 until and unless the law is precisely defined.   Although the Second Circuit has not yet fully "determined the contours of the supervisory liability test," see Raspardo v. Carlone, 770 F.3d 97, 117 (2d Cir. 2014), this Court finds that Sergeant Brown's alleged actions fall squarely within the "contours" of deliberate indifference, which has long been recognized as a basis for liability by the Second Circuit, including after the Supreme Court's 2009 decision in Iqbal: "A supervisory official may be liable in an action brought under § 1983 if he exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Qualified immunity is not available to those who knowingly violate the law." Vincent v. Yelich, 718 F.3d 157, 173 (2d Cir. 2013) (internal citations, emphasis, and punctuation omitted).

Further, Mirabella does not state a claim as to the alleged assaults involving Vosburgh, Stachewicz, and Roache.   Mirabella pleads minimal facts as to these incidents, alleging only that Vosuburgh "acted as a lookout" for an assault by unnamed officers that "caus[ed] [Mirabella] to feel serious pain," and that Stachewicz refused to report the incident.   (Am. Compl. ¶ 22.)   As to the assault allegedly perpetrated by Roache, Mirabella simply states that Roache "unnecessarily and wantonly assaulted" him, then threatened him to keep quiet.   (Id. ¶ 25.)   These allegations do not meet the deliberate indifference standard set forth above, nor do they state a claim for excessive force.   To state an excessive force claim, Mirabella must allege that: (1) "the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions," and (2) "the defendant acted with a subjectively sufficiently culpable state of mind," which is "characterized by wantonness in light of the particular circumstances surrounding the challenged conduct."   Harris v. Miller, 818 F.3d 49, 63 (2d Cir. 2016) (citations and internal quotations omitted).   As pleaded, Mirabella's claims fail to meet either prong.

Nor do Mirabella's allegations regarding deprivations rise to the level of a constitutional violation.   Mirabella alleges that he slept one night without a mattress (Am. Compl. at ¶ 18); he was denied food for 24 hours (id. at ¶¶ 21, 22, 27); and that he was denied access to the shower, phones, mail supplies, commissary, chow hall, bible study, and "standard items for his cell" on several occasions (id. at ¶¶ 22, 27). However, brief or isolated losses of privileges do not violate the Eighth Amendment. See Suarez v. Kremer, No. 03-CV-809, 2008 WL 4239214, at *8 (W.D.N.Y. Sept. 11, 2008) (collecting cases); Snyder, 2004 WL 1949472, at *11 (granting a motion to

dismiss because the denial of food on two occasions is de minimis and not actionable); Ford v. Phillips, No. 05 CIV. 6646 (NRB), 2007 WL 946703, at *9 (S.D.N.Y. Mar. 27, 2007) ("[A]s a matter of law, minor and temporary deprivations of property, showers and recreation do not violate the Eighth Amendment."). The restrictions alleged by Mirabella "rise only to a *de minimis* level of imposition with which the Constitution is not concerned." Buthy v. Commissioner of the Office of Mental Health of New York State, 818 F.2d 1046, 1050 (2d Cir. 1987) (citation omitted).

Finally, Mirabella fails to set forth a conspiracy involving these Defendants. To sustain a conspiracy claim under § 42 U.S.C.1983, a plaintiff must demonstrate that the defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." Malsh v. Austin, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted). "Complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief." Walsh v. Goord, No. 07-CV-0246Sr, 2007 WL 1572146, at *7 (W.D.N.Y. May 23, 2007). Although Mirabella alleges that Defendants "engaged in a joint venture and formed an agreement to violate [his] rights," the only evidence he points to is that his cell was left open after the slashing incident "to facilitate payment" to the inmate who attacked him, and that inmate who slashed him was not disciplined. (Am. Compl. at ¶¶ 32-36.) He does not make any allegations that Vosburgh, Stachewicz, or Roache left the cell open or made the decision not to discipline his attacker. Nor does he allege that Vosburgh, Stachewicz, or Roache formed an agreement with Kiener or participated in his alleged actions. Because the allegations of

17

a "joint venture" are not supported by any specific facts giving rise to the plausible existence of a conspiracy, Mirabella fails to allege a plausible claim.  See Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (claims based on "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" are properly dismissed).

Accordingly, the claims against Vosburgh, Stachewicz, and Roache are dismissed.

**D.     Captain Gilmore, Deputy Superintendent Eckert, and Superintendent Artus**

Mirabella's allegations are also lacking as to the remaining Supervisory Defendants.   In order to be liable as a supervisor, there must be an underlying constitutional violation.  See Raspardo, 770 F.3d at 129 ("Because we have held that there was no underlying constitutional violation, there is also no supervisory liability."). Because Mirabella's pleadings as to the "harassment" and "assaults" fail to state a claim, the sole constitutional violation alleged by Mirabella is Correctional Officer Kiener's actions, specifically the incitement of attacks by other inmates.

Mirabella alleges that all of the Supervisory Defendants "should have been aware" of their employees' "propensity . . . to engage in constitutional violations" and "may have in fact been aware of the specific threats confronting" Mirabella.   (Am. Compl. at ¶ 49.)  He also makes general allegations that there were metal detectors available at Attica, but that these were not utilized for inmates entering and exiting the recreation yard (where Mirabella was attacked).  (Id. at ¶ 30.)

With respect to the metal detectors, Mirabella has not alleged that the Supervisory Defendants are responsible for the policy that they not be used at the

entrance to the recreation area.  Even if he had, Mirabella's bare allegation would not be sufficient to state a claim for deliberate indifference.  Warren v. Goord, 579 F. Supp. 2d 488, 496 (S.D.N.Y. 2008), aff'd, 368 F. App'x 161 (2d Cir. 2010) (deliberate indifference claim dismissed where plaintiff offered only conclusory statements that use of "metal detectors would significantly reduce the risk to inmates of being assaulted by other inmates").  Nor has Mirabella alleged the object that slashed him was made of metal.

And unlike Sergeant Brown, whom the Amended Complaint alleges was informed of the specific risk to Mirabella's safety through his letter requesting intervention, there is no indication that the other Supervisory Defendants knew of, and failed to respond to, Kiener's behavior and the resulting threat to Mirabella's safety. Instead, Mirabella pleads only that these Defendants were aware of the general risks for prisoners at Attica.  However, "[t]he general risk that plaintiff encounters due to the nature of his conviction is the same as other prisoners who share the same type of convictions.  The law is not based on knowledge of a 'general risk.'"  Gillard v. Jarvis, No. 9:11-CV-1021 LEK/ATB, 2012 WL 7037734, at *7 (N.D.N.Y. Nov. 6, 2012), report and recommendation adopted, No. 9:11-CV-1021 LEK/ATB, 2013 WL 474384 (N.D.N.Y. Feb. 7, 2013) (citing Hogan v. Fischer, No. 09–CV–6225, 2012 WL 4845609, at *6 (W.D.N.Y. Oct.10, 2012) (failure to protect against a general threat of harm is insufficient)).

The specific allegations with respect to Superintendent Artus and Captain Gilmore cannot form the basis of a claim, because they relate only to these defendants' knowledge outside the period relevant to the alleged constitutional violation. Superintendent Artus allegedly signed off on the dismissal of a grievance filed by Mirabella on March 3, 2014, wherein Mirabella complained that he was being harassed by corrections officers.  (Id. at 50.)  And Captain Gilmore is alleged to have sent a letter on May 6, 2014, in response to a letter sent by a family member of Mirabella on May 3, 2014, "acknowledg[ing] that 'due to the nature' of plaintiffs [sic] crime, it is 'not unusual' that he would have 'problems' with other inmates."  (Id. at ¶ 52, see also Exh. B to the Original Complaint.)  But the critical period, as alleged, falls between April, 6, 2014— when Kiener "published" Mirabella's charges to the inmates on his cell block—and April 19, 2014—when Mirabella was attacked.  Prior to April 6, 2014, there had not yet been a constitutional violation, and after April 19, 2014, Mirabella was placed in the protective custody unit to "keep him safe from other inmates."  (Exh. B to the Original Complaint.) Therefore, Superintendent Artus could not have been deliberately indifferent, because a constitutional violation had not yet occurred and there was not yet a threat to Mirabella's safety.  And Captain Gilmore could not have been deliberately indifferent, because Mirabella was in protective custody at the time he is alleged to have been made aware of the situation, and so no longer in danger.

Accordingly, Mirabella does not state a claim for failure to protect against Captain Gilmore, Deputy Superintendent Eckert, and Superintendent Artus.

## III. CONCLUSION

This Court finds that Mirabella has stated claims only against Correctional Officer Kiener and Sergeant Brown.  The claims against all other defendants are dismissed without prejudice pursuant to Rule 12(b)(6).

## IV. ORDERS

IT HEREBY IS ORDERED that Defendants' motion to dismiss the Amended Complaint (Docket No. 19) is GRANTED as to the claims against Correctional Officers Roache, Stachewicz, and Vosburgh, as well as to Captain Gilmore, Deputy Superintendent Eckert, and Superintendent Artus;

FURTHER, that the motion to dismiss is DENIED as to the claims against Correctional Officer Kiener and Sergeant Brown;

FURTHER, that the Clerk of Court is directed to terminate Correctional Officers Roache, Stachewicz, and Vosburgh, as well as Captain Gilmore, Deputy Superintendent Eckert, and Superintendent Artus, as parties.

SO ORDERED.

Dated: September 4, 2016
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge

21