UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TODD MIRABELLA,

            Plaintiff,

vs.

CORRECTION OFFICER O'KEENAN; CORRECTION
OFFICER JOSBURG; CORRECTION OFFICER
STACHEWIC; CORRECTION OFFICER ROACH;
SERGEANT BROWN; SUPERINTENDENT DALE
ARTUS; DEPUTY SUPERINTENDENT IN CHARGE OF   **Docket No. 15-cv-142-WMS**
SECURITY SETWART ECKERT; "D" BLOCK
SERGEANT BROWN CAPTAIN JAMES GILMORE;
LIEUTENANT INVESTIGATING MARCH 3,
GRIEVANCE JOHN DOE #1; CORRECTION
OFFICIALS ##1-20,

            Defendants.
_____

## **STATEMENT OF UNDISPUTED FACTS**

    Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules of Civil Procedure for the Western District of New York, defendants SCOTT BROWN and DANIEL KIENER submit this statement of undisputed material facts in support of their Motion for Partial Summary Judgment. The only facts material to this motion are not in dispute, and are as follows:

1. At the time of the events alleged in the Complaint, the plaintiff, Todd Mirabella was an inmate in the case and custody of the Department of Corrections and Community Supervision ("DOCCS") (¶ 2 of the Amended Complaint [hereinafter "Compl."] ECF No. 17; see also pages 22 - 23 of the deposition of Todd Mirabella, taken on August 30,

2017, relevant portions of which are attached as Exhibit "A" to the declaration of George Michael Zimmermann, submitted herewith).

2. The plaintiff was serving time for a criminal sexual act. Comp. ¶ 17; and Mirabella dep. pg. 25.

3. At the time of the events alleged in the Complaint, defendant Daniel Kiener was a Correction Officer employed by DOCCS at Attica Correctional Facility (See ¶ 1 of the declaration of Daniel Kiener, submitted herewith).

4. At the time of the events alleged in the Complaint, defendant Scott Brown was a Correction Sergeant employed by DOCCS at Attica (See ¶ 1 of the declaration of Scott Brown, submitted herewith).

5. The events with which this case is concerned occurred at Attica. Mirabella dep. pgs. 6 - 7.

6. At some point after coming to Attica, the plaintiff was assigned to work in the library and was moved to a cell in D Block. Mirabella dep. pg. 40.

7. His assigned cell was on 39 company. Mirabella dep. pg. 43.

8. In April of 2014, Officer Kiener was assigned as the 3 p.m. to 11 p.m. company officer for 39 and 40 companies, which are located on the second floor of D Block. Mirabella dep. pg. 107; and Kiener dec. ¶ 5.

9. During this time period, Officer Kiener also worked other jobs and shifts at Attica. Kiener dec. ¶ 6.

10. The plaintiff first saw Officer Kiener when he transferred to D Block in Attica. Mirabella dep. pg. 48.

11. Sgt. Brown may have been assigned to D Block in April of 2014, on the 3 p.m. to 1 a.m. shift. Brown dec. ¶ 6.

12. During this time period, Sgt, Brown also worked other jobs and shifts at Attica. <u>Brown dec.</u> ¶ 6.

13. Soon after he was moved to D Block an inmate nicknamed "Mandingo" informed plaintiff that there was a "hit" out on the plaintiff. <u>Mirabella dep.</u> pgs. 48 – 49.

14. Mandingo stated that the hit had been put out by "Officer K". <u>Mirabella dep.</u> pg. 48 – 49.

15. Plaintiff believes this conversation occurred on April 7, 2014. <u>Mirabella dep.</u> pg. 55.

16. Although Mandingo informed plaintiff that Officer K had printed out his criminal charges, plaintiff never actually saw a print out of his charges that Officer Kiener had printed out. <u>Mirabella dep.</u> pg. 49.

17. The plaintiff also alleges that an Officer O'Keenan told him that he printed out his charges at home and showed it to other inmates. <u>Mirabella dep.</u> pgs. 126 – 127; & 131 – 132; and <u>Zimmermann dec.</u> Ex. B, Bates No. 000036.

18. On the same day that Mandingo told plaintiff about the hit, April 7, 2014, the plaintiff also spoke to Officer Kiener on his way back from the library. <u>Mirabella dep.</u> pgs. 52 – 53.

19. The plaintiff states that Officer Kiener also told him there was a "hit" on him. <u>Mirabella dep.</u> pgs. 53 & 132.

20. Plaintiff further states that Officer Kiener said he was "trying to figure out what to do with it", meaning this information. <u>Mirabella dep.</u> pg. 53.

21. Plaintiff states that Kiener then said that he thought it was important to tell the other inmates what the plaintiff had been convicted of, so he printed the charges and showed it to the inmates on plaintiff's gallery. <u>Mirabella dep.</u> pgs. 53 and 132.

22. Most Correction Officers do not have access to inmate conviction information maintained on DOCCS computers. <u>Mirabella dep.</u> pgs. 33 – 34; and <u>Brown dec.</u> ¶ 34.

23. Officer Kiener did not have access to inmate conviction information maintained on DOCCS computers. <u>Brown dec.</u> ¶ 34.

24. Although not recalling the plaintiff specifically, Officer Kiener recalls having a conversation with an inmate who was later slashed in the yard, who he believes to be the plaintiff. <u>Kiener dec.</u> ¶ 8.

25. Officer Kiener states that this inmate told Kiener his criminal charges, with out Kiener asking him. <u>Kiener dec.</u> ¶ 9.

26. In response, Officer Kiener asked the plaintiff why he was going to the yard. <u>Kiener dec.</u> ¶ 10.

27. He did so because the yard is a common location for inmate on inmate violence. <u>Kiener dec.</u> ¶ 10.

28. Officer Kiener denies telling plaintiff that there was a "hit" out on him. <u>Kiener dec.</u> ¶ 20.

29. Plaintiff's cellmate, one Osa Womack, also told plaintiff there was a "hit" out on him. <u>Mirabella dep.</u> pg. 50.

30. Plaintiff states that on April 16, 2014, he saw Officer Kiener whisper in to the porter's cell "When are you going to take care of this guy?" <u>Mirabella dep.</u> pg. 51 & 55.

31. The inmate porter's cell on plaintiff's company was near plaintiff's cell. <u>Mirabella dep.</u> pg. 44, 50, & 51.

32. The plaintiff describes the porter as a "bodybuilding Black fellow, roughly forty years old, maybe six foot tall, two hundred and fifty pounds." <u>Mirabella dep.</u> pg. 52.

33. Aside from those incidents, the plaintiff had no further problems with Officer Kiener, prior to his being assaulted on April 19. Mirabella dep. pg. 55 - 56.

34. Plaintiff states that after his first day there, he never told anyone at Attica the nature of his conviction. Mirabella dep. pg. 61 - 62.

35. Plaintiff states that after hearing about the "hit" he sent two letters to "the Sergeant" regarding the harassment he was subject to. Mirabella dep. pg. 68.

36. In D Block there is a mailbox specifically for inmates to write to the Block Sergeants. Mirabella dep. pgs. 123 – 124; and Brown dec. ¶ 10.

37. Inmates can deposit correspondence in this mailbox on their way to eat. Mirabella dep. pg. 123; and Brown dec. ¶ 10.

38. This box is locked. Mirabella dep. pg. 124.

39. Sgt. Brown would check the Sergeant's mailbox at the start of each shift. Brown dec. ¶ 11.

40. Sgt. Brown would also check his assigned mailbox in the Administration building every shift. Brown dec. ¶ 11.

41. The first letter the plaintiff wrote was dated April 13, 2014, and was addressed to "Sergeant". Mirabella dep. pgs. 138 – 139; and Zimmermann dec. Ex. B, Bates No. 000129.

42. The plaintiff did not know which Sergeant he was sending the letter to or which Sergeant would receive it. Mirabella dep. pgs. 138 – 139.

43. The plaintiff placed the April 13 letter in the Sergeants' mailbox in D Block. Mirabella dep. pg. 139.

44. The letter dated April 13, 2014, does not mention any officers by name, including officer Kiener, despite the fact that it is dated six days after plaintiff claims Officer Kiener told him he had disclosed plaintiff's criminal charges. Zimmermann dec. Ex. B, Bates No. 000128 - 000131.

45. The second letter plaintiff says he wrote was dated April 17, 2014, and was addressed to "Sergeant". Mirabella dep. pg. 140 – 142; and Zimmermann dec. Ex. B, Bates No. 000127.

46. The plaintiff did not know which Sergeant he was writing the April 17 letter to. Mirabella dep. pg. 142.

47. The plaintiff placed the April 17 letter in the Sergeants' mailbox in D Block. Mirabella dep. pg. 142.

48. On any given day, three Sergeants are assigned to D Block, one for each of the three separate shifts. Brown dec. ¶ 7.

49. In addition, other Sergeants would fill in for the regular Sergeants on their regular days off. Brown dec. ¶ 7.

50. Any one of these five Sergeants, aside from Sgt. Brown, could have received the plaintiff's letters, if he indeed wrote and mailed them as he claims. Brown dec. ¶¶ 7 and 15 - 16.

51. When he received correspondence from an inmate complaining of a particular situation, Sgt. Brown would interview the inmate and then attempt to resolve the situation. Brown dec. ¶ 12.

52. If an inmate told Sgt. Brown that he was being harassed or felt threatened, Sgt. Brown would interview the inmate in his office. Brown dec. ¶ 14.

53. If the Sergeant thought the inmate was in danger, he would offer him Protective Custody. Brown dec. ¶ 14.

54. Whether the inmate accepted or refused Protective Custody, there would be a document indicating that it had been offered to him and he either wanted it or refused it. Brown dec. ¶ 14 and 17.

55. Sgt. Brown responded to all inmate's written complaints of threats or harassment. Brown dec. ¶ 17.

56. To ignore inmate's complaints of threats or harassment could threaten the safety and good order of the facility. Brown dec. ¶ 17.

57. Sgt. Brown did not receive either of the plaintiff's letters. Brown dec. ¶¶ 13 and 25.

58. Had Sgt. Brown received either of plaintiff's letters, there would be documentation of that. Brown dec. ¶ 14 and 17.

59. On April 19, 2014, the plaintiff was attacked in the D Block yard at Attica. Mirabella dep. pg. 68.

60. Officer Kiener was not in the yard when the plaintiff was slashed. Kiener dec. ¶ 24.

61. Sgt. Brown was not in the yard when the plaintiff was slashed. Brown dec. ¶ 37.

62. On April 19, 2014, the plaintiff went to the yard, planning to smoke a cigar. Mirabella dep. pgs. 74 & 75 – 76; (See also pages 45 – 46 of the deposition of William Andrews, taken on November 9, 2017, relevant portions of which are attached as Exhibit "C" to the declaration of George Michael Zimmermann, submitted herewith).

63. There were one-hundred and thirty-eight inmates in the D Block yard on April 19, 2014. Andrews pgs. 32 – 33.

64. Plaintiff was in the yard for no more than ten to twenty minutes when he was attacked by

another inmate. <u>Mirabella dep.</u> pg. 76; and <u>Andrews</u> pg. 24.

65. The plaintiff had walked one circuit of the yard when an inmate stopped him, asked him a question, and then swung at the plaintiff. <u>Mirabella dep.</u> pg. 77.

66. The plaintiff at first thought the other inmate was going to ask if he could buy a cigar. <u>Mirabella dep.</u> pg. 77.

67. The plaintiff deflected the first blow, but on the second blow the other inmate slashed the plaintiff. <u>Mirabella dep.</u> pgs. 77 – 78.

68. The plaintiff did not see any weapon in his attacker's hands. <u>Mirabella dep.</u> pg. 83.

69. The plaintiff does not know what he was slashed with. <u>Mirabella dep.</u> pg. 84.

70. The plaintiff had never seen the inmate who slashed him prior to the attack. <u>Mirabella dep.</u> pg. 79.

71. The plaintiff does not know the name, nick name, or department identification number of the inmate who slashed him. <u>Mirabella dep.</u> pg. 79.

72. The plaintiff describes his attacker as "probably five, six" with "Coke bottle glasses" that "made his eyes look almost cross-eyed. He was Mulatto or White, but maybe Mulatto-ish." A "hundred and fifty-five pounds, not that big at all." "If I had to guess, I would say thirty." <u>Mirabella dep.</u> pgs. 78 – 79.

73. The plaintiff does not believe that the inmate who attacked him was housed on 39 company. <u>Mirabella dep.</u> pgs. 79 – 80.

74. The plaintiff never had any problems with his attacker before the attack. <u>Mirabella dep.</u> pg. 80.

75. The plaintiff never saw his attacker again. <u>Mirabella dep.</u> pg. 80.

76. After he was attacked, the plaintiff walked over to the "bubble" where the Correction Officer was stationed. Mirabella dep. pg. 80.

77. At that point he did not identify or point out the inmate who slashed him, because he did not want to be labeled a "snitch". Mirabella dep. pg. 80.

78. The Officer in the bubble took plaintiff into the Block. Mirabella dep. pg. 80.

79. Once in the Block, he was taken to an area where a group of Officers were located, including Officer Kiener. Mirabella dep. pg. 88; and Kiener dec. ¶ 13.

80. The plaintiff was told to stand in frisk position, and after about one minute Officer Kiener asked him to remove some paper towels he had over the wound so Kiener could see the wound. Mirabella dep. pg. 89; and Kiener dec. ¶ 14.

81. Officer Kiener did this to determine the severity of the plaintiff's injury, to see if he should be immediately taken to the infirmary. Kiener dec. ¶ 14.

82. Officer Kiener did not say anything to the plaintiff when he looked at the wound. Mirabella dep. pgs. 89 – 90.

83. The plaintiff was then immediately escorted to the infirmary. Mirabella dep. pgs. 90 – 91; and Kiener dec. ¶ 15.

84. From there, the plaintiff was taken to an outside hospital. Mirabella dep. pgs. 94 – 95.

85. On returning from the outside hospital, the plaintiff was taken to the infirmary at Attica, where he stayed two or three days. Mirabella dep. pgs. 97 & 99 – 100.

86. From the infirmary the plaintiff was placed in a Protective Custody housing unit. Mirabella dep. pgs. 104 – 105.

87. When the plaintiff retrieved his property from his cell on thirty-nine company, he realized that some of his property was missing. Mirabella dep. pgs. 104 – 105.

88. When plaintiff retrieved his property, his cellmate Osa Womack was in the cell. Mirabella dep. pgs. 105 – 106.

89. Although he has heard "hearsay" about it, the plaintiff does not know of his own personal knowledge what happened to his missing property. Mirabella dep. pgs. 107 – 108.

90. Officer Kiener had no role in the disappearance of plaintiff's property. Kiener dec. ¶ 25.

91. Sgt. Brown had no role in the disappearance of plaintiff's property. Brown dec. ¶ 38.

92. The plaintiff filed an inmate grievance regarding his complaints against Officer Kiener and the attack in the yard. Mirabella dep. pgs. 112 – 113; and Zimmermann dec. Ex. B, Bates No. 000089.

93. Sgt. Brown investigated this Grievance. Mirabella dep. pgs. 113 – 114; and Brown dec. ¶ 21 & Ex. "A".

94. As part of his investigation, Sgt. Brown interviewed the plaintiff on May 31, 2014. Mirabella dep. pg. 65; and Brown dec. ¶ 22.

112 The interview regarding plaintiff's grievance was the first time plaintiff ever spoke to Sgt. Brown. Mirabella dep. pg. 64 – 65, & 66; and Brown dec. ¶ 22.

113 Prior to that, plaintiff had seen Sgt. Brown walking down the gallery but never spoke to him. Mirabella dep. pg. 66.

114 Plaintiff believes that Sgt. Brown was investigating a grievance that involved Sgt. Brown. Mirabella dep. pg. 65.

115 The plaintiff's grievance does not mention a Sergeant or any letters to a Sergeant, let alone Sgt. Brown. Zimmermann dec. Ex. B, Bates No. 000089; and Brown dec. ¶ 25.

116 Sgt. Brown was not investigating himself. Brown dec. ¶ 25.

117  As part of his investigation, Sgt. Brown obtained statements from Officer Kiener and Officer Roach, who are the only Attica staff mentioned in the grievance. Zimmermann dec. Ex. B, Bates No. 000089; and Brown dec. ¶ 23 & Ex. A Bates Nos. 000071 & 000073 - 000074.

118  Officer Kiener's memorandum responding to plaintiff's grievance denied putting a "hit" on the plaintiff. Kiener dec. ¶ 16.

119  Officer Kiener also denied having anything to do with the disappearance of plaintiff's property. Kiener dec. Ex. A.

120  Following his investigation, Sgt. Brown summarized his findings in a memorandum to a Capt. Towbridge. Brown dec. ¶ 24 & Ex. A. Bates 000072

121  The plaintiff filed a Claim with DOCCS regarding his lost property. Mirabella dep. pgs. 109 – 111; and Zimmermann dec. Ex. B, Bates No. 000003 - 000006.

122  The plaintiff's Claim states that he "wrote to the D Block Sergeant requesting that he get involved and stop the hit" but does not mention Sergeant Brown by name. Zimmermann dec. Ex. B, Bates No. 000003.

123  Sgt. Brown was assigned to investigate the plaintiff's Claim. Brown dec. ¶ 26.

124  Sgt. Brown interviewed the plaintiff as part of his investigation of the Claim. Brown dec. ¶ 7.

125  Sgt. Brown obtained a statement from Office Kiener in regard to plaintiff's Claim. Kiener dec. ¶ 17; and Brown dec. ¶ 28.

126  Officer Kiener authored a memorandum responding to plaintiff's Claim, in which he denied having any role in the disappearance of the plaintiff's property. Kiener dec. ¶ 17 & Ex. B.

127   Sgt. Brown also checked the D Block Log Book and the files of the Deputy Superintendent of Security as part of his investigation of plaintiff's Claim. Brown dec. ¶ 29.

128   At the end of his investigation, Sgt. Brown recommended that the plaintiff's Claim be denied. Brown dec. ¶ 30.

129   The plaintiff was reimbursed "$302.83 (which represented the full amount, less a few items of food that he could not prove was used prior to the incident)". Compl. ¶ 34; and Mirabella dep. pg. 113.

130   The plaintiff alleges that there were magnetometers available at Attica which could have been used on inmates going to the yard. Compl. ¶ 30.

131   The plaintiff claims that if magnetometers were used they could have prevented plaintiff's injuries. Compl. ¶ 30.

132   The magnetometers were not used on inmates going to the yard. Mirabella dep. pg. 152.

133   Officer Kiener had no role in the use of magnetometers in D Block. Kiener dec. ¶ 29.

134   Sgt. Brown had no role in the use of magnetometers. Brown dec. ¶ 32.

135   The policy on the use of magnetometers was made above the level of Sergeant. Brown dec. ¶ 32.

136   Inmates are frisked on the way to the D Block yard, on an inmate by inmate basis. Brown dec. ¶ 33.

137   It would impossible to frisk every inmate on the way to the yard and still provide time for recreation. Brown dec. ¶ 33.

138   Prior to being attacked, plaintiff never requested protective custody. Mirabella dep. pgs. 66 – 67; and Kiener dec. ¶ 19.

139     The plaintiff never told Officer Kiener that he felt threatened. Kiener dec. ¶ 11.

140     Officer Kiener did not know that the plaintiff had written a Sergeant saying that he felt threatened. Kiener dec. ¶ 12.

141     Officer Kiener did not encourage other inmates to attack plaintiff. Kiener dec. ¶ 21.

142     Officer Kiener was not aware that the plaintiff was in any danger. Kiener dec. ¶ 22.

143     Officer Kiener does not know why the plaintiff was assaulted. Kiener dec. ¶ 23.

144     Officer Kiener did not access plaintiff's conviction information, and did not provide plaintiff's conviction information to other inmates. Kiener dec. ¶¶ 26 - 28.

145     Sgt. Brown was not aware that plaintiff was in any danger, prior to the plaintiff being assaulted. Brown dec. ¶ 35.

146     Sgt. Brown does not know who assaulted the plaintiff. Brown dec. ¶ 36.

147     Sgt. Brown does not know why the plaintiff was assaulted. Brown dec. ¶ 36.

DATED:      Buffalo, New York
            February 6, 2018

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendants SCOTT BROWN and
DANIEL KIENER
BY:

/s/ George Michael Zimmermann
GEORGE MICHAEL ZIMMERMANN
Assistant Attorney General of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
(716) 853-8444
George.Zimmermann@ag.ny.gov