UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x
TODD MIRABELLA,

                                        Plaintiff,


                -against-


CORRECTION OFFICER KIENER; CORRECTION
OFFICER VOSBURGH; CORRECTION OFFICER
STACHEWICZ; CORRECTION OFFICER ROACHE;
SERGEANT BROWN; SUPERINTENDENT DALE
ARTUS; DEPUTY SUPERINTENDENT IN CHARGE OF
SECURITY SETWART ECKERT; "D" BLOCK
SERGEANT BROWN CAPTAIN JAMES GILMORE;
LIEUTENANT INVESTIGATING MARCH 3, 2014
GRIEVANCE JOHN DOE #1; CORRECTION
OFFICIALS ##1-20,


                                        Defendants.
----------------------------------------------------------------------- X

**MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT**

15 CV 142 (WMS)

Stoll, Glickman & Bellina, LLP
By: Leo Glickman
5030 Broadway, Ste. 652
New York, NY 10034
(718) 852-3710 (phone)
(718) 852-3586 (fax)
lglickman@stollglickman.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………………… ii

INTRODUCTION…………………………………………………………………….……. 1


ARGUMENT

I.      SERGEANT BROWN WAS DELIBERATELY INDIFFERENT AND/OR GROSSLY
        NEGLIGENT AND THUS PERSONALLY INVOLVED IN THE CONSTITUTIONAL
        VIOLATION………………………………………………………………………. 2


POINT II

        DEFENDANTS FAILED TO PROTECT PLAINTIFF ……………………..…… 7

                A.  Under the facts and circumstances of this case, the allegations that
                    plaintiff did not know his attacker, that defendants allege it was a
                    "surprise attack, and that defendant Kiener did not know the particular
                    inmate who posed the threat are irrelevant. …………………………… 10

                B.  Since plaintiff has demonstrated that he had been seeking assistance from
                    prison officials through grievances and letters prior to the incident, the
                    fact that he did not request protective custody does not relieve the
                    defendants of liability……………………………………..…………… 11

                C.  C. Plaintiff has established a causal connection between defendant
                    Kiener's conduct in publishing his charges and putting a hit on him and
                    the imminent danger that he faced…………………………………….. 12

POINT III

        PLAINTIFF CAN SHOW THAT DEFENDANT KIENER'S MISCONDUCT WERE
        THE PROXIMATE CAUSE OF PLAINTIFF'S INJURIES THROUGH ADMISIBLE
        EVIDENCE ………………………………………………………………………. 16

POINT IV

        DENIAL OR DESTRUCTION OF PROPERTY…………………………...………. 18

POINT V

        DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY………….. 18

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

Arnold v. Cnty. of Nassau,
89 F. Supp. 2d 285, 305 (E.D.N.Y. 2000) vacated on other grounds, 252 F.3d 599 (2d Cir. 2001)…10

Allah v. Juchnewioz,
1999 WL 562100, at 3 (S.D.N.Y.1999)……………………………………………………………….……. 9

Ashcroft v. Iqbal,
556 U.S. 662 (2009)……………………………………………………………………….…………….. 4

Brock v. Wright,
315 F.3d 158, 164 (2d Cir.2003)………………………………………………………….……. 8

Campbell v. Gardiner,
2014 WL 906160, at 4 (W.D.N.Y. 2014)……………………………………………………… 9

Colon v. Coughlin,
58 F.3d 865, at 973………………………………………………….…………………….……. 4

Cruz v. City of New York,
2015 WL 464021, at 4 (S.D.N.Y. Jan. 30, 2015)……………………………………...………… 10

Davis v. Velez,
797 F.3d 192, 200 (2d Cir.2015)………………………………….…………………………....… 16

Delee v. Hannigan,
2018 WL 1517153, at 4 (2d Cir. Mar. 28, 2018)……………………….…………………………... 5

Farmer v. Brennan
511 U.S. 825 at 857……………………………………….……………………………. 8

Fernandez v. New York City Dep't of Correction,
2010 WL 1222017, at 4 (S.D.N.Y. 2010) ………………………………………………….. 9

Fernandez-Bravo v. Town of Manchester,
711 F. App'x 5, 8 (2d Cir. 2017) …………………………………………..…………….. 17

Gayle v. Gonyea,
313 F.3d 677, 684 (2d Cir. 2002)…………………………………...…………………………. 17

Hayes v. New York City Dep't of Corr.,
84 F.3d 614, 620 (2d Cir. 1996)……………………………………………………….. 8

McPherson v. Coombe,
174 F.3d 276, 280 (2d Cir.1999…………..……………………………………………… 8

Montero v. Crusie,
153 F. Supp. 2d 368 at 377 (S.D.N.Y. 2001)…………………………………………… 9

Ross v. Correction Officers John & Jane Does 1-5,
610 F. App'x 75, 77 (2d Cir. 2015). …………………………………………………… 8

Snyder v. McGinnis,
2004 WL 1949472 at 11 (W.D.N.Y.  J. Skretny, 2004)………………………………… 10

Weyant v. Okst,
101 F.3d 845, 854 (2d Cir. 1996)……………………………………………………… 6

Williams v. Smith,
781 F.2d 319, 323 (2d Cir. 1986). …………………………………………………….. 6

White v. New York State Office of Children & Family Servs.,
 2017 WL 1011485, at 1 (N.D.N.Y., 2017)…………………………………….……… 6

Wood v. Skinner,
2000 WL 1209378 (W.D.N.Y., 2000)……………………………………….………… 11,12

United States v. Blake,
195 F. Supp. 3d 605, 609 (S.D.N.Y. 2016)………………………………..…………….. 16

United States v. Gotti,
457 F.Supp.2d 395, 397 (S.D.N.Y.2006)………………………..……………………… 16

United States v. Marin,
669 F.2d 73, 84 (2d Cir.1982). FRE 801(d)(2)………………………..………………… 16

<u>INTRODUCTION</u>

Plaintiff Todd Mirabella is a 50-year-old man who was convicted of a sex related crime, specifically, that he had sex with underage girls.  Mr. Mirabella had never had any run in with the law prior to these accusations, and certainly had no criminal convictions of any kind in his life.

Mr. Mirabella has always proclaimed his innocence.  He refused plea deals and went to trial but was convicted.  He has since been taking all legal actions, including appeals and motions to reopen the case to establish his innocence.  He continues to fight for his freedom and his good name.

Of course, none of this ought to be relevant to correction officials.  Mr. Mirabella wishes only that he be treated like any other inmate and within the parameters of the law.  However, like other inmates charged with sex crimes, he has been targeted for abuse and assault by correction officials.  This, apparently, is not uncommon at Attica Correctional Facility ("Attica CF").  The New York Correctional Association, an organization with the statutorily mandated responsibility to report on the state of New York's correctional facilities, reported on Attica CF in November 2014, just months after Mr. Mirabella was harassed and assaulted. It stated:

> "[M]ost consistently reported was that people convicted of sex offenses were targeted for abuse. Numerous people reported that security staff will assault people they identify as convicted of sex offenses, will 'burn' those individuals and force them to stay in their cells for several days, and/or will inform other incarcerated persons about people's crimes of conviction as a mechanism to encourage peer violence against those convicted of sex crimes. As one person most clearly articulated the issue: "there is 'vigilante justice' towards people convicted of sex offenses. Officers physically attack them; officers announce what they are locked up for; officers keep them locked in their cells, denying them the ability to go to the mess hall for breakfast, lunch, and dinner; and officers have other [incarcerated persons] attack them." Multiple people reported that people convicted of sex offenses are

> physically assaulted whenever they first arrive in Attica's C-block.
> As one person reported, 'anyone with a sex crime in C-block is
> assaulted [by COs] upon entering C-block and scared into not
> writing about it. COs also get other incarcerated persons to beat
> these people up and sometimes cut up.'"

See ¶ 56 of the First Amended Complaint ("FAC").

This report fits perfectly the pattern of abuse alleged by the plaintiff Todd Mirabella. The permanent scar on his face is a testament to the official brutality that occurs with impunity at Attica C.F.

ARGUMENT

I.   SERGEANT BROWN WAS DELIBERATELY INDIFFERENT AND/OR
     GROSSLY NEGLIGENT AND THUS PERSONALLY INVOLVED IN THE
     CONSTITUTIONAL VIOLATION

Defendants restate an argument they made in their Memorandum of Law in Support of their Motion to Dismiss, to wit, that sending two letters to a supervisor cannot support a claim for supervisory liability. The argument was rejected. Docket #35, pp. 10-13.

On April 13 and again on April 17, plaintiff drafted letters and deposited them in the Sergeant's box. Glickman Decl. Ex. A p. 142:7-10. The Sergeant's box was for communications from inmates. Glickman Decl. Ex. B p. 40:16-21. Sergeant Brown would check it every time he was on duty. Glickman Decl. Ex. B p. 41:5-6.

Sergeant Brown knows that his regular "bid" while a sergeant at Attica was D block sergeant. He could not, however, recall any dates, even approximate dates, when he worked that bid. He knew he had extended bids as D block sergeant at least three or four times, but could not say how long. He knew that he supervised defendant Officer Kiener as a D block sergeant but could not say when. He was asked if there were any documents that contained such information. He replied the "chart scheduling… printed up on a two-week cycle." Glickman Decl. Ex. B pp.

2

10:13–11:1. He did not review these documents to determine whether he worked during the relevant time period. Glickman Decl. Ex. B p. 7-9.

A review of the chart, however, does not show him working at the facility at all between April 6 and April 19, 2014.  Glickman Decl. Ex. C.  This cannot be the case, however.  A log book clearly indicates that he worked as the D block sergeant on April 18, 2015.  Glickman Decl. Ex. D at p. 61.  He testified that he was the only "Sgt. Brown" at the facility, so this entry refers to  him.  Glickman Decl. Ex. B p.70:15-18.  Furthermore, there is no protocol to log such letters in any way.  In addition to the April 13 and April 17 letters, which were produced by defendants but bear no indication that they were logged in, there is also a letter he sent to a Captain Brown on May 3 that was also produced by defendants but bearing no indication that it was stamped. Glickman Decl. Ex. E.  Defendant Brown admits that the letters are not logged.  In his Declaration, he states that the believes he did not receive the letters because he did not generate paperwork responding to the letters. Brown Decl. Para. 13.  If DOCCS supervisors do not act on letters sent by inmates, plaintiffs simply have no way of proving that letters have been sent and received.

However, though Defendant Brown may not remember whether or not he was the D block sergeant around the time or and prior to the slashing, Defendant Kiener recalled.  Kiener testified that he started working as a D block officer sometime between 2010 and 2014 and continued until January 2017.  Glickman Decl. Ex. F p. 13:4-14.  He "probably" worked in that bid for at least two years before 2014.  Id.  He stated that his consistent supervisor, who was the D block sergeant, was Sergeant (now Lieutenant) Brown and another sergeant whose name escaped him. Glickman Decl. Ex. F p. 19:10-20.

As noted above, defendant Brown was the D block sergeant on April 18, 2014.  In addition,

3

he was tasked to investigate the grievance filed by plaintiff after the slashing.  Defendant Brown testified that the grievance is "assigned by area of responsibility. So if you're the D-4 sergeant you're going to get a D-4 complaint."  Glickman Decl. Ex. B 46:10-15.  It therefore appears that he was the D block sergeant on April 19 as well.

In document demand No. 7, plaintiff asked for "[C]opies of the roll call and all other documents that would state what officers were present at the time of the incident." Glickman Decl. Ex. G.  The term, "incident" was defined as follows: "The term 'incident' shall refer to all the factual allegations alleged and referenced in the complaint, including all events leading up to the slashing on April 19, 2014, the slashing itself, and the alleged theft of the contents of plaintiff's cell."  Id. at number 1 under General Instructions.  For the sake of clarity, when the plaintiff demanded information only pertaining to the April 19 slashing itself, it specifically referred to that date.  *See*  Id. Document demand Nos. 13-18. In response to Document Demand No. 7, plaintiff produced the staff scheduling grid from April 6 to April 19, 2014, the documents that defendant Brown said should indicate his work schedule.

This court in its Motion to Dismiss decision made clear that two letters received by a supervisor and result in supervisory liability under Colon v. Coughlin, 58 F.3d 865, at 973.   As the Motion to Dismiss decision further made clear, each of the five ways in which a plaintiff can demonstrate supervisory liability stands after Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The fact that the decision was on a FRCP12(b)(6) motion and not as here on a FRCP 56 motion makes no material difference in the analysis of whether the Colon factors survive.  Indeed, Colon itself was decided on a motion for summary judgment.  And as the Second Circuit held again two weeks ago on a post-trial appeal, "[P]ersonal involvement of a supervisory defendant may be shown by evidence that:  "(1) the defendant participated directly in the alleged constitutional violation, (2)

4

the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."  Delee v. Hannigan, 2018 WL 1517153, at 4 (2d Cir. Mar. 28, 2018) *citing* Colon.

As was considered by this court on the Motion to Dismiss, it was pled that plaintiff sent defendant Brown two letters.  The letters were attached and incorporated by reference. This court specifically denied defendants' contention that two letters were not enough to state a claim that Brown as a supervisor was deliberately indifferent or grossly negligent that unconstitutional acts were occurring or were about to occur (Colon factors four and five).  Defendants raise the same cases to the court here as they did in their Motion to Dismiss that the court had determined are readily distinguishable from the facts pled here.  As the court determined, in some of those cases, the letters had been sent after the incident, in others, they were acted upon appropriately.  Docket #35 p. 12.  In this case, the court noted that the letters were sent before the incident in fear that his safety was in imminent danger.  Id.  Defendants raise no new caselaw since the Motion to Dismiss was decided in this case.

The pleading was corroborated by plaintiff's deposition.  When asked if he complained to staff prior to the April 19 slashing, he stated: "I think it was the 14th, I sent a letter to the sergeant and then again on the 17th… complaining about abuse and escalating abuse and then also a worry that the abuse had reached a point that I discerned to be immediately dangerous."  Glickman Decl. Ex. A p. 68:9-22.  Since the pled allegations are confirmed in discovery, the reasoning in

the motion to dismiss must still stand in this Motion for Summary Judgment.

This court, of course, "must grant summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>White v. New York State Office of Children & Family Servs.</u>, 2017 WL 1011485, at 1 (N.D.N.Y., 2017) *citing* FRCP 56(a). "[P]ersonal involvement is a question of fact[.]" <u>Id</u>. c*iting* <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986). "Defendants 'bear the burden of establishing that no such dispute exists.'" <u>Id</u>. "In ruling on a motion for summary judgment, the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." <u>Id</u>. at 2 *citing* <u>Weyant v. Okst</u>, 101 F.3d 845, 854 (2d Cir. 1996). It is noteworthy that summary judgment against a supervisory liability claim was denied in <u>White</u> even though there was no certain proof that the defendant/movant had notice. <u>White</u> at 1-3.

Plaintiff submits that defendants have not carried their burden that no dispute of fact exists. DOCCS, either by design or neglect, does not log in letters sent to the Sergeant's box or to a particular official's mail inbox. Unless a prison official acts upon the letters, the inmate can never know which, if any, prison official received it. Inmates can certainly not rely on the memory of any sergeant. Defendant Brown was asked in an interrogatory if he received any correspondence from the plaintiff or on behalf of the plaintiff. He responded: "I have no recollection of receiving any correspondences from plaintiff or any person on behalf of plaintiff. <u>In my role as a Corrections Sergeant, I received correspondence from many inmates over the years concerning any number of subjects</u>. [Emphasis added.] Glickman Decl. Ex. H at No. 8. When asked if he acted on them, he added "…I therefore have no recollection of whether I took

any actions in response to the correspondences referenced in Interrogatory #8, if, in fact, I received such correspondences."  Glickman Decl. Ex. H at No. 9.  For his part, plaintiff believes that defendant Sergeant Brown received the letters because other inmates told him that that is the "same Sergeant Brown that you are writing about and he believed that he was sent to investigate himself."  Glickman Decl. Ex. A p. 65:2-24.

Whether defendant Brown received the letters is in dispute. The question for summary judgment is whether a jury could infer that Brown was personally responsible by receiving and ignoring the letters.  The answer clearly is yes.  As described above, Defendant Brown claimed to have no recollection whether he was the D block sergeant at any relevant times here, but did admit that he had often served as the D block sergeant at Attica, it was often his bid – his routine job.  He further stated that he *could* find out by checking the two-week cycle chart but had not done so prior to the deposition. At any rate, had he checked, he would not find himself there.  A log book entry indicates that he worked the block on April 18, 2014.  And he said that he was assigned to investigate the grievance because they are generally assigned to the Block Sergeant where the incident occurred.  Defendant Kiener testified that defendant Brown was consistently the D block sergeant while he worked there, which of course was during and prior to the slashing.  He neither confirms nor denies receiving plaintiff's letters.  We respectfully submit that based on defendant Brown's testimony and documents, and plaintiff's testimony, that a jury could reasonably infer that defendant Brown received the letters.  Therefore, summary judgment as to defendant Brown should be denied.

## POINT II
## DEFENDANTS FAILED TO PROTECT PLAINTIFF

The Eighth Amendment guarantees each prisoner that reasonable measures will be taken

to ensure his safety.  Farmer v. Brennan, 511 U.S. 825 at 857.  "Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate."  Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996).  The deliberate indifference standard for liability has an objective and subjective element.  Id.  See also Ross v. Correction Officers John & Jane Does 1-5, 610 F. App'x 75, 77 (2d Cir. 2015).

The objective element requires that a "plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm."  Id.  The subjective test requires a plaintiff to demonstrate that "the prison official involved must have acted with a 'sufficiently culpable state of mind.'"  Id. citing  McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999). "Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient to make this showing." Id. citing  Brock v. Wright, 315 F.3d 158, 164 (2d Cir.2003).

In the court's decision on the Motion to Dismiss, the court ruled that plaintiff "has pleaded sufficient allegations against Kiener, which, if substantiated, could establish an Eighth Amendment violation." Docket #35 at p. 7.  Plaintiff pled that Kiener conspicuously published his charges, which were for sex crimes involving minors, and that he had come to understand that Kiener put a hit on him.  Docket #17 para. 25-29.  Defendants do not appear to claim that there is no genuine dispute of fact about these allegations.  Rather, they argue that:

1.      Plaintiff did not know his attacker, and it was a "surprise" attack; page 13

2.      There is no allegation that Kiener knew which particular inmate might pose a threat to plaintiff; page 14

3.      Plaintiff did not request protective custody; page 14 and

4.      Plaintiff fails to "connect the dots" between defendants' Kiener's in publishing his

criminal charges and putting a hit on him and Kiener's knowledge that plaintiff faced imminent danger as a result; page 15.

A.  <u>Under the facts and circumstances of this case, the allegations that plaintiff did not know his attacker, that defendants allege it was a "surprise attack, and that defendant Kiener did not know the particular inmate who posed the threat are irrelevant.</u>

Regarding the first two points, defendants argued in their Motion to Dismiss that "plaintiff did not allege that Kiener had any prior contact with the inmate who slashed his face…"  The argument was rejected by the court.  As noted above, the act of publishing his sex related crimes to inmates and placing a hit on him can establish an Eighth Amendment claim.  The cases defendants cite to in support of these propositions do not support their legal arguments.  To the contrary, in <u>Fernandez v. New York City Dep't of Correction</u>, 2010 WL 1222017, at 4 (S.D.N.Y. 2010) the court specifically holds that the complaint "fails to state facts from which a court can reasonably infer that any officer at DOC had knowledge of a risk to Plaintiff, and disregarded that risk by failing to take reasonable measures to protect Plaintiff's safety."  Clearly here, plaintiff has alleged that defendants Kiener and Brown had knowledge of a risk to his safety.  As to Kiener, through his publishing of his charges and putting a hit on him, and Brown through the letters he sent.

Courts have held that a claim for deliberate indifference may lie where a corrections officer identifies an inmate as being an informant or "snitch" in front of other inmates.  <u>Campbell v. Gardiner</u>, 2014 WL 906160, at 4 (W.D.N.Y. 2014).  "[D]ecisions in this Circuit have recognized that an inmate may incur the risk of physical harm at the hands of other inmates if he is labeled a 'snitch.'"  <u>Id.</u> <i>citing</i> <u>Allah v. Juchnewioz</u>, 1999 WL 562100, at 3 (S.D.N.Y.1999).  An officer calling an inmate a "snitch" in the presence of other inmates "suggests deliberate conduct that creates a real risk of physical injury. Such conduct by an officer is capable of satisfying both the

objective and subjective prongs." <u>Cruz v. City of New York</u>, 2015 WL 464021, at 4 (S.D.N.Y. Jan. 30, 2015). In <u>Cruz</u>, plaintiff did not allege that he faced a threat from any particular inmate, nor did he allege he knew when the attack would occur.  It was enough that one of the defendants labelled him a snitch, and that constituted deliberate conduct causing risk of physical injury.  <u>Id</u>.

Courts in this district also recognize that a prisoner convicted of certain sex offenses may be in grave danger if the prison population learns of the charges.  "[A] jury can assess whether the municipality's policymakers responsible for attending to prisoner safety knew or should have known that sex offense prisoners or detainees faced a substantial risk of serious harm…"  <u>Arnold v. Cnty. of Nassau</u>, 89 F. Supp. 2d 285, 305 (E.D.N.Y. 2000) *vacated on other grounds*, 252 F.3d 599 (2d Cir. 2001).  In <u>Montero v. Crusie</u>, 153 F. Supp. 2d 368 at 377 (S.D.N.Y. 2001), the plaintiff alleged that defendant correction officers "spread rumors" that plaintiff "was gay, was a child molester, and was a rapist."  The court ruled "[i]n the prison context in which plaintiff was required to live, one can think of few acts that could be more likely to lead to physical injury than spreading rumors of homosexuality." <u>Id</u>.  This court also has acknowledged the security risk in being labelled a snitch and child molester in a prison setting.  <u>Snyder v. McGinnis</u>, 2004 WL 1949472 at 11 (W.D.N.Y.  J. Skretny, 2004).   In the case at bar this court in the Motion to Dismiss decision recognized the dangers for inmates convicted of sex crimes and child molestation.  Docket #35 p. 7-8.  Indeed, defendant Kiener himself testified that he believes that inmates convicted of sex crimes face greater danger of assault than other inmates.  Glickman Decl. Ex. F p. 29:18-21.  This was also explained in a letter sent to plaintiff's concerned family member Kristy Wrubleski by Captain Gilmore.  Glickman Decl. Ex. T.

Plaintiff testified with great specificity about the allegations he made against Defendant Kiener.  He testified that he knew from other inmates, including his bunkmate who was also

convicted of sex crimes, that a hit had been placed on him.  Glickman Decl. Ex. A p. 50:4-20.

He testified that on April 7, 2014 another inmate who worked in the law library told him about

the hit and that it was put on him by defendant Kiener.  Glickman Decl. Ex. A pp. 52:18–53:21.

He testified that Defendant Kiener called him in front of the bubble and told him that the hit was

placed on him because he (Kiener) had told inmates and shown them his criminal convictions,

also on April 7. Glickman Decl. Ex. A pp. 52:18–53:21.   He testified that on April 16 – three

days before the slashing -- he saw defendant Kiener put his head in between the bars of the porter

whose cell was right next to plaintiff's and ask "when are you going to take care of this guy?"

Glickman Decl. Ex. A pp. 50:24 – 51:14 and 55:16-19.

Defendant Kiener testified that he had a conversation with a tall, white inmate about his

charges in front of the bubble some days prior to that inmate being slashed, but could not say it

was plaintiff. Now, however, in his declaration he admits that it was the plaintiff he spoke to.

Kiener Decl. para. 8. Glickman Decl. Ex. F pp. 38:13 – 41:2.

B.  Since plaintiff has demonstrated that he had been seeking assistance from prison officials
through grievances and letters prior to the incident, the fact that he did not request protective
custody does not relieve the defendants of liability.

Plaintiffs cite to a decision in which a *pro se* plaintiff did not submit a response to

defendants' motion for summary judgment to support the notion that a plaintiff not asking for

protective custody somehow relieves correction officials of liability for creating a risk and failing

to protect an inmate from that risk.   Wood v. Skinner, 2000 WL 1209378 (W.D.N.Y., 2000).

The court, without the benefit of opposition papers, remarked that the plaintiff had failed to show

that defendants had any notice at all of the attack by other inmates and that he did not appear to

take any steps to seek assistance, citing a lack of a request for protective custody as one example.

In fact, in the very next sentence, the court holds: "In short, because the plaintiff fails to

create any factual dispute regarding defendants' knowledge of a substantial risk to the plaintiff's

safety, he has failed to create a factual dispute regarding even the infliction of punishment, a

clear prerequisite to an Eighth Amendment claim." <u>Wood v. Skinner</u>, 2000 WL 1209378, at 2

(W.D.N.Y., 2000).   In the case here, it can hardly be said that the plaintiff failed to create such a

factual dispute.  Plaintiff claims that defendant Kiener knew about the hit because he put the hit

on plaintiff, as described above.  <u>Wood</u> actually supports plaintiff's case.

Plaintiff was asked at deposition why he did not request protective custody.  He replied:

> "Well, there are two reasons – actually maybe three reasons.  In this environment, going into protective custody means that you are twenty-three hours a day locked down with very limited access to law libraries and other things that are pertinent to me [plaintiff is appealing his conviction].   You're not allowed to do regular programs.  And on top of that it puts a sort of stigma on an inmate in here as well, on top of all of that, that you must be in here for something that you need to be protected from, which makes you another moving target to certain inmates that look for that predatory."

Glickman Decl. Ex. A 66:24-67:15.


C. <u>Plaintiff has established a causal connection between defendant Kiener's conduct in publishing his charges and putting a hit on him and the imminent danger that he faced.</u>

Days before being slashed, he was told by an inmate and by defendant Kiener himself

that there was a hit on him. Glickman Decl. Ex. A pp. 52:18–53:21. Kiener further told him that

in that conversation that he (Kiener) had shown the other inmates on the gallery plaintiff's

criminal charges. Id.  Plaintiff told Kiener he was concerned about it because he had heard that,

and Kiener said, cryptically, "I'm trying to figure out what to do with it." Id.  Then three days

before the actual incident, Kiener spoke to the porter housed in the cell next to plaintiff's and

said "when are you going to take care of this guy", referring to plaintiff. Glickman Decl. Ex. A p.

51:3-14.  Defendants of course are free to dispute whether these incidents occurred, but if proven

to a jury they clearly "connect the dots" between the slashing and defendant Kiener's knowledge that he was going to be slashed.

Beyond that, the lack of a serious investigation that took place after this incident is indicative that the attack was expected and encouraged by certain corrections officials. Defendant Sergeant Brown and Sergeant O'Connell both acknowledge that plaintiff was the victim of a crime committed by another inmate when he was slashed. Glickman Decl. Ex. B p. 39:20-23 and Glickman Decl. Ex. I p. 29:4-11. Sergeant O'Connell was responsible for handling the investigation of the slashing, including identifying the perpetrator. Glickman Decl. Ex. I p. 38:2-9. Yet, despite being concerned that a weapon was in the yard, Glickman Decl. Ex. I p. 38:18-20, very little was done, and it was frankly almost all focused on investigating the plaintiff.

Plaintiff was slashed in the D block yard, an enclosed area. There were 138 inmates in the yard at the time of the slashing, including plaintiff. O'Connell believed he was slashed by another inmate with a sharpened object. Glickman Decl. Ex. I p. 41:11-14; 42:3-7. Obviously, someone had possession of or had secreted away a bloodied sharp object. Yet, he did not order that any inmate in the yard be frisked or searched. Glickman Decl. Ex. I p. 36:17-19. He said that it was possible for the sharpened object to have gone back into someone's cell, but he did not order a search of any cell other than the plaintiff's, the victim of the crime. Glickman Decl. Ex. I p. 38:10-13; 43:3-7. No one's cell was frisked. Glickman Decl. Ex. I p. 35:3-6. In pursuit of his investigation, he ordered that plaintiff's cell be searched, but no others.

Sergeant O'Connell submitted a memorandum to Lieutenant Kaczmarek regarding the slashing and the investigation. Glickman Decl. Ex. J. It indicates that Sergeant O'Connell received a report about the incident from Officer Andrews, that O'Connell questioned plaintiff

about the slashing, that a "frisk was done of the general area where the inmate was and no contraband was found."  He further noted that plaintiff's cell was frisked and photographs were taken.  Ending the memorandum, and the investigation, he states "all appropriate paperwork was completed and filed."  Id.

Correction Officer Andrews was working at the observation platform for the yard when plaintiff was slashed. Glickman Decl. Ex. K pp. 15:21-16:12.   He alleged he did not see plaintiff being slashed.  Glickman Decl. Ex. K p. 38:20-22.  However, at approximately 2:15 pm, he noticed that plaintiff was walking towards him and that he was injured.  Glickman Decl. Ex. K p. 45:6-14.  He escorted plaintiff out of the yard after he was slashed. Glickman Decl. Ex. K p. 39:2-5. From the time he left his post to escort plaintiff to the time he returned to his post at the observation platform, only one to two minutes elapsed.  Id.  He was on duty until 3:00 PM that shift.   Glickman Decl. Ex. K p. 39:11-15.   From the time he returned to his post on the observation platform of the yard after escorting the plaintiff -- a minute or two after 2:15 – until the time he left for the day, he did not witness any investigation take place, either in the yard or anywhere else.   Glickman Decl. Ex. K pp. 39:11– 40:14.  He did not see any search of the yard. Id.   Andrews' testimony appears to contradict O'Connell's assertion in his memorandum to Lieutenant Kaczmarek that even the inadequate step of searching the "general area where the inmate was…" had actually occurred. Glickman Decl. Ex. J. At best, however, a search of the yard would have happened more than 45 minutes after the incident, which would hardly be designed to find a weapon and identify a perpetrator.

Finally, also evidencing that this was a planned attack and well known to the prison officials, including defendant Kiener, was that plaintiff's cell was ransacked and stripped of all plaintiff's personal belongings.  Defendant Brown testified that when inmates leave their cells,

14

they are required to close their cell door.  Glickman Decl. Ex. B p. 20:14-18.  He has never

observed an inmate leave his cell door open.  Glickman Decl. Ex. B p. 20:19-20.  In the event a

cell door was left open by an inmate, defendant Brown would expect that a correction officer

would close the door.  Glickman Decl. Ex. B p. 21:2-8.

When the slashing occurred, plaintiff was obviously not in his cell, he was in the yard.

Approximately one hour and 15 minutes after he was slashed, plaintiff's cell was searched.

Glickman Decl. Ex. L.   Plaintiff was being treated and transported to the hospital. It is

undisputed that when he returned, all his belongings of value were gone.  Glickman Decl. Ex. M.

It is further undisputed that he was reimbursed for nearly all lost items, and that DOCCS

concluded that his cell door was left open by a correction officer. Glickman Decl. Ex. N.  He

heard from another inmate that the porter in the cell next to his had his property and paying off

certain people. Glickman Decl. Ex. A p. 107:22 – 108:9.

Defendant Sergeant Brown was placed in charge of investigating plaintiff's claim for

reimbursement for his lost belongings.  Despite the obvious fact that the correction officer who

searched his cell after the slashing left the cell door open, defendant Brown denied his claim,

stating incredibly "I can find no evidence of agency liability to Inmate Mirabella's alleged loss."

Glickman Decl. Ex. O.

Plaintiff fought this finding, and Penny Brown, a civilian employee of Attica C.F., stated

"will concede property might not have been secured during incident and cell move."  She offered

a settlement of $90.  Plaintiff appealed and received the full amount of his claim.  Glickman

Decl. Ex. N.

There is clearly sufficient evidence in the record to establish a causal link between

Defendant Kiener's conduct and his knowledge that plaintiff would be attacked, and the attack

itself.  We therefore respectfully submit that defendants' motion for summary judgment should be denied.

**POINT III**
**PLAINTIFF CAN SHOW THAT DEFENDANT KIENER'S MISCONDUCT WERE THE**
**PROXIMATE CAUSE OF PLAINTIFF'S INJURIES THROUGH**
**ADMISIBLE EVIDENCE**

Defendants' assertion that part of what happened is plaintiff's own fault is disingenuous at best.  When he was still in the yard bleeding, he did not give information at that moment because one, he did not want other inmates seeing or hearing him give information and two for fear of being labelled a snitch, he just wanted to get out of there and stop the bleeding.  Glickman Decl. Ex. A p. 85:20-86:2.  In fact, when Sergeant O'Connell came to interview him in the infirmary, he began to tell him what happened.  As he began, starting with Officer Kiener's hit on him, Sergeant O'Connell turned and walked out.  Glickman Decl. Ex. A p. 91:15 – 92:16.

Furthermore, there is admissible evidence supporting plaintiff's claim that Kiener put a hit on him.  As described above, defendant Kiener told plaintiff that he had shown his criminal charges to other inmates on plaintiff's gallery. This is a non-hearsay statement because it is made by a party in the case.  *See* Fed. R. Evid. 801(d)(2)(A).  "A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted. See FRE 801(c); see also <u>Davis v. Velez</u>, 797 F.3d 192, 200 (2d Cir.2015). However, 'a party's own statement, if offered against him, is not hearsay.' <u>United States v. Marin</u>, 669 F.2d 73, 84 (2d Cir.1982). FRE 801(d)(2) provides that a statement is not considered hearsay if the 'statement is offered against a party and is ... the party's own statement.' <u>United States v. Gotti</u>, 457 F.Supp.2d 395, 397 (S.D.N.Y.2006). Statements made by a defendant are generally admissible 'regardless of whether such statements were against his interest when made.' <u>Id</u>.  <u>United States v. Blake</u>, 195 F. Supp. 3d 605, 609

16

(S.D.N.Y. 2016).

Besides this admissible direct evidence, there is a great deal of circumstantial evidence for the attack. For example, plaintiff's increasingly desperate letters to defendant Sergeant Brown in the days prior to the slashing Glickman Decl. Ex. P and Q, the second one, coming just two days before the slashing, naming Officer "K" (defendant Kiener) as the officer who put the hit on him. Also, there was the prior harassment grievance plaintiff filed in March 2014 at Attica alleging staff assaulted him and threatened him due to his charges and warning him, prophetically, that things will get "much worse" for him. Glickman Decl. Ex. R. Furthermore, despite the serious nature of the crime committed against plaintiff, and the obvious security threat that a weapon poses in the hands of an inmate who has already shown a willingness to use it, virtually no investigation to find the weapon or identify the perpetrator took place. Also, the fact that somehow his cell was left open and either officers or inmates were apparently allowed to take all his items of value from his cell after he was slashed, supports the allegation that Kiener put a hit on plaintiff, and plaintiff's personal belongings were the payoff.

Plaintiff has adduced direct evidence of Kiener's responsibility for the attack. However, even without direct evidence, the Second Circuit held that circumstantial evidence is enough to defeat summary judgment. "The defendants argue that Gayle has failed to meet his evidentiary burden because he has failed to submit direct evidence that the report was filed as a retaliatory measure. But circumstantial evidence may be, and we think that in this case it is, sufficient to raise a genuine issue of material fact precluding the grant of summary judgment." Gayle v. Gonyea, 313 F.3d 677, 684 (2d Cir. 2002). The holding was recently affirmed by the court: "[c]ircumstantial evidence may be ... sufficient to raise a genuine issue of material fact precluding the grant of summary judgment…" Fernandez-Bravo v. Town of Manchester, 711 F.

App'x 5, 8 (2d Cir. 2017).

## POINT IV
## DENIAL OR DESTRUCTION OF PROPERTY

Plaintiff has made no claim for denial or destruction of property.  Defendants' Motion for

Summary Judgment should be denied as moot.

## POINT V
## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendant Brown submits that he should not be held liable even if he was deliberately

indifferent to plaintiff's beseeching letters requesting assistance because the courts have not

clearly established that such indifference to a prisoner's safety is unconstitutional.  The Court in

this case has already rejected the argument.  It is worth restating here:

> This Court is not persuaded by Sergeant Brown's contention that
> the law regarding supervisory liability in this Circuit is currently so
> unsettled that Sergeant Brown could not assess whether his actions
> 'violated clearly established statutory or constitutional rights of
> which a reasonable person would have known.' This argument
> would, in effect, allow qualified immunity to entirely negate
> supervisory liability under § 1983 until and unless the law is
> precisely defined.  Although the Second Circuit has not yet fully
> 'determined the contours of the supervisory liability test,' this
> Court finds that Sergeant Brown's alleged actions fall squarely
> within the 'contours' of deliberate indifference, which has long
> been recognized as a basis for liability by the Second Circuit,
> including after the Supreme Court's 2009 decision in Iqbal: 'A
> supervisory official may be liable in an action brought under §1983
> if he exhibited deliberate indifference to the rights of inmates by
> failing to act on information indicating that unconstitutional acts
> were occurring. Qualified immunity is not available to those who
> knowingly violate the law.'"

Docket #35, page 15 fn. 4.  [Citations omitted.]

The caselaw has not changed since the Court's Motion to Dismiss decision was issued,

and defendants offer no new caselaw.  Moreover, the Complaints both attached and incorporated by reference the two letters that plaintiff sent, and the same two letters were produced in discovery and was the subject of inquiry by defendants in plaintiff's deposition.  No allegations have changed.  Defendant Brown, as discussed above, does not deny receiving the letters, he just does not remember whether or not he received the letters because he received "correspondence from many inmates over the years concerning any number of subjects."  Glickman Decl. Ex. H at No. 8.  There is therefor no material difference between the decision about the two letters sent to defendant Brown in the pre-discovery Motion to Dismiss and the post-discovery Motion for Summary Judgment.  We respectfully submit that defendants' motion on qualified immunity grounds must be denied again.

For all the foregoing reasons, plaintiff requests that the Motion for Summary Judgment be denied in total.

DATED:    New York, NY
          April 9, 2018

                    STOLL, GLICKMAN & BELLINA, LLP

                BY: _____
                    Leo Glickman
                    Attorney for Plaintiff
                    5030 Broadway, Ste. 652
                    New York, NY 10034
                    (718)852-3710
                    lglickman@stollglickman.com