UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TODD MIRABELLA,

                              Plaintiff,

v.                                                                **DECISION AND ORDER**
                                                                             15-CV-142S

CORRECTION OFFICER O'KEENAN, et al.,

                              Defendants.

## I. INTRODUCTION

Plaintiff Todd Mirabella, an inmate housed at Attica Correctional Facility ("Attica"), filed this action alleging violations of his Eighth Amendment rights under 42 U.S.C. § 1983. Presently before the Court is Defendants Correctional Officer Kiener and Sergeant Brown's Motion for Summary Judgment (Docket No. 48), seeking dismissal of the claims against them.[1] For the following reasons, the motion is denied as to the claim against Correctional Officer Kiener and granted as to the claim against Sergeant Brown.

## II. BACKGROUND[2]

At the time of the events alleged in the Complaint, Mirabella was an inmate in the care and custody of the Department of Corrections and Community Supervision ("DOCCS"), serving time for a sex crime. In February 2014, Mirabella transferred from Elmira Correctional Facility into Attica, where he was eventually placed in D Block, 39 Company. During the relevant period, Defendant Kiener was assigned as the 3 p.m. to

---

[1] Kiener and Brown are the only remaining Defendants following this Court's decision on the Defendants' earlier motion to dismiss brought under Rule 12(b)(6). (Docket No. 35.)
[2] The facts are derived principally from the parties' Local Rule 56 Statements, the parties' declarations, and exhibits attached thereto. Only the facts necessary to the resolution of the motion are recounted below. The facts are undisputed unless otherwise stated.

1

11 p.m. shift officer for 39 and 40 companies, though he sometimes worked other jobs and shifts; Defendant Brown was employed as a Correction Sergeant at Attica and may have been assigned to D Block on the 3 p.m. to 1 a.m. shift, though he also worked other jobs and shifts.

Mirabella alleges that, soon after he moved to Attica's D Block, around April 7, 2014, an inmate informed him that "Officer K" had put a "hit" out on him and showed other inmates a printed copy Mirabella's criminal charges. Mirabella further alleges that, on that same day, Kiener told Mirabella there was a "hit" on him and that he had printed out Mirabella's charges and shown them to the inmates because he thought it was important they know the nature of Mirabella's conviction. Mirabella also alleges that, on April 16, 2014, he saw Kiener whisper in to the porter's cell "When are you going to take care of this guy?" Mirabella understood this to be encouraging an attack.

Kiener states that he recalls having a conversation with an inmate who was later slashed in the yard, who he believes to be Mirabella, but denies that it took place as Mirabella described. Kiener contends that the inmate told him the nature of the criminal charges without Kiener asking[3] and, in response, Kiener inquired why the inmate was going into the yard because it is a common location for inmate-on-inmate violence. Kiener later stated that, in his experience as a corrections officer, an inmate convicted on sex-related charges is more likely to be a victim of attacks from other inmates. Kiener also disputes having printed out any criminal charges.[4]

---

[3] Mirabella contends that he never told anyone at Attica the nature of his conviction after the day that he arrived there.

[4] Kiener states that he did not have access to the inmate conviction information maintained on DOCCS computers. However, certain information pertaining to DOCCS inmates is publicly available online, including an inmate's crimes of conviction. See Department of Corrections and Community Supervision Inmate Lookup, http://nysdoccslookup.doccs.ny.gov/.

Mirabella alleges that, due to his concern regarding the "hit" and other harassment by correctional officers, he wrote two letters directed to "Sergeant" and placed them into a locked mailbox in D Block into which inmates can deposit correspondence to the Block Sergeants. In the first letter, dated April 13, 2014, Mirabella stated that a correctional officer threatened to kill him, that another correctional officer put a "hit" on him, and that he had been denied certain privileges, without naming any specific officers. In the second letter, dated April 17, 2014, Mirabella specified that "Officer K," presumably Kiener, "has effectively put a 'hit' on me by printing out the incidentals of my case and providing that info to several 39 company inmates for the sole reason of inciting violence." (Docket No. 1-1 at 5.)

Brown did not respond to Mirabella's letters nor, apparently, did any other Sergeant. On a given day, three Sergeants are assigned to D Block, one for each of the three separate shifts. In addition, other Sergeants would fill in for the scheduled Sergeants on their days off. Any one of these Sergeants, aside from Brown, could have received the Mirabella's letters. Mirabella admits that he did not send the letters to a specific sergeant and did not know which sergeant would receive them. Brown stated that he checked the Sergeant's mailbox at the start of each shift, never received either of the Mirabella's letters, and would have responded if he had.

On April 19, 2014, two days after Mirabella sent his second letter, Mirabella was attacked in the D Block yard by another inmate. Mirabella states that he had never seen his attacker prior to the incident, does not know his name, nickname, or department identification number, and does not believe he was housed on 39 Company. Kiener and Brown were not present in the yard when Mirabella was attacked.

3

Immediately after the attack, Mirabella left the yard and went inside where a group of Officers were on duty, including Kiener. Kiener asked Mirabella to remove the paper towels he had over the wound so Kiener could determine the severity of the injury and assess whether Mirabella should be taken to the infirmary. Kiener did not say anything to Mirabella when he examined at the wound. Mirabella was then escorted to the infirmary. The incident resulted in in a 7.5 inch slash to the left side of Mirabella's face that required 27 sutures and caused a permanent scar. Mirabella never saw his attacker again.

Mirabella alleges that his cell was intentionally left open while he was being treated for his injury, which facilitated payment (*e.g.*, the valuable items in Mirabella's cell) to the inmate or inmates involved in the attack.[5] Mirabella also cites a letter from Attica Captain Gilmore sent to Mirabella's family after the slashing, wherein Gilmore states that it was "not unusual" for inmates like Mirabella to have "problems" with other inmates "considering the nature of his crimes." (Docket No. 56-20.)

### III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

---

[5] Mirabella was reimbursed in full (less a few food items) for the property taken from his cell.

4

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) *cert. denied*, 540 U.S. 811 (2003) (quoting Anderson, 477 U.S. at 248). A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

**A.    Claim Against Kiener**

Mirabella alleges that Kiener violated his Eighth Amendment rights by publishing his charges to other inmates and that this was the cause of the attack by an unknown inmate less than two weeks later. Kiener argues that Mirabella has failed to meet the subjective and objective requirements of the Eighth Amendment, and that he has failed to show causation.

Under the Eighth Amendment, "[p]rison officials have a duty to protect prisoners from violence at the hands of other inmates since being violently assaulted in prison is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" Lee v. Artuz, No. 96-CV-8604, 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citation omitted)). To establish an Eighth Amendment claim, a prisoner must satisfy a two-part test, composed of an objective and subjective element. Farmer, 511 U.S. at 845. Objectively, the conduct at issue, evaluated "in light of contemporary standards of decency," Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks omitted), must be "sufficiently serious . . . to reach constitutional dimensions," Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1996) (internal quotation marks omitted). The

5

subjective element requires the prison official accused of violating the Eighth Amendment to have possessed a "wanton state of mind" in carrying out the conduct at issue. Branham v. Meachum, 77 F.3d 626, 630 (2d Cir. 1996) (internal quotation marks omitted).

Construing the disputed facts in the light most favorable to Mirabella, as this Court must for the purposes of this motion, Kiener told Mirabella there was a "hit" on him, and told other inmates that Mirabella had been convicted of a sex crime, knowing that inmates who are convicted of such crimes are more likely to be the victim of inmate-on-inmate violence. Kiener also asked the porter in a cell near Mirabella's when he would "take care of" Mirabella. As this Court has previously held, the allegations that Kiener purposefully informed other inmates of the nature of Mirabella's charges in order to incite violence against him satisfies the first—objective—prong of the Eighth Amendment inquiry. Smith v. Miller, No. 15-CV-9561 (NSR), 2017 WL 4838322, at *11 (S.D.N.Y. Oct. 23, 2017) ("there is no question that instructing or encouraging other [inmates] to attack an inmate poses an objectively serious risk of harm"). Mirabella's allegations also satisfy the second—subjective—portion of the test, as "[i]ntentionally exposing an inmate to the risk of harm . . . with no penological purpose is indicative of deliberate indifference to the inmate's safety at best and manifests an intent to harm the inmate at worst." Mirabella v. Correction Officer O'Keenan, No. 15-CV-142S, 2016 WL 4678980, at *4 (W.D.N.Y. Sept. 7, 2016) (quoting Medina v. Whitehead, No. 3:13-CV-885 VLB, 2014 WL 3697886, at *2 (D. Conn. July 24, 2014)). Although Kiener argues that corrections officers are generally not liable in a surprise or isolated attack, as happened here, that is because the officers in such cases are not on notice of potential danger to the victim. See, e.g., Fernandez v. New York City Dep't of Correction, No. 08 CV 4294(KMW), 2010 WL 1222017, at *4

6

(S.D.N.Y. Mar. 29, 2010) (no liability in "surprise attacks" where there is not "clear notice of a risk of harm to the prisoner"). Here, not only was Kiener alleged to be on notice of potential inmate violence against Mirabella, his actions created the danger.

Kiener further contends that Mirabella has not submitted direct evidence to establish that his alleged actions were the cause of the attack. However, circumstantial evidence of causation can be "sufficient to raise a genuine issue of material fact precluding the grant of summary judgment." See Mateo v. Fischer, No. 08 CIV. 7779 RJH, 2011 WL 3586074, at *4 (S.D.N.Y. Aug. 11, 2011) (quoting Gayle v. Gonyea, 313 F.3d 677, 684 (2d Cir. 2002)). Here, the circumstantial facts that could allow a finder of fact to conclude that Kiener's alleged actions incited the attack include: (i) the temporal proximity between Kiener informing other inmates of Mirabella's charges and the attack; (ii) Kiener's statement that he thought the other inmates should know about Mirabella's charges; (iii) the incendiary nature of Mirabella's charges and the acknowledgment that inmates with such charges are more likely to be attacked; and (iv) Mirabella's statement that he did not know or have any prior issues with the inmate who attacked him.[6]

Mirabella's allegations that Kiener conspicuously published his criminal charges to inmates on the cell block, and that Kiener told Mirabella he had a "hit" on him, suggest deliberate conduct that created a real risk of physical injury. These allegations are distinguishable from the evidence in King v. Dep't of Correction, No. 95 CIV. 3057 (JGK), 1998 WL 67669 (S.D.N.Y. Feb. 18, 1998), in which the plaintiff relied primarily on his "feeling" that an officer was colluding with his attackers and vague threats. Id. at *4. Mirabella's allegations regarding Kiener's statements are sufficiently specific to suggest

---

[6] Mirabella contends that the theft of his belongings and the lack of investigation after the attack further demonstrates that the attack was encouraged by Kiener and condoned by other corrections officers.

7

that Kiener sought to provoke an inmate-attack, and Mirabella actually suffered such an attack, resulting in an injury and a permanent facial scar. Such evidence, viewed in the light most favorable to Mirabella, satisfies both the objective and subjective prongs of the Farmer test and provides circumstantial evidence of causation.

Accordingly, Kiener's motion for summary judgment as to the claim against him is denied.

## B.     Claim Against Brown

Mirabella alleges that Brown violated his constitutional rights by failing to respond to the letters he placed in the Sergeant mailbox in which he expressed fear for his safety and sought assistance. Brown contends that he did not receive the letters and that Mirabella has provided evidence of personal involvement.

### 1.  Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). A plaintiff can show that a supervisor was personally involved in at least one of five ways: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were

occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

In Grullon, the Second Circuit held that, "[a]t the pleading stage, even if [the plaintiff] had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference . . . that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained." 720 F.3d at 141. See also Toliver v. City of New York, 530 Fed. App'x 90, 93 (2d Cir. 2013) (describing Grullon as: "*pro se* allegations that a prisoner sent a letter to a warden complaining of unconstitutional conditions that were not remedied are sufficient to state a claim for deliberate indifference against the warden"). Following Grullon's approach, this Court denied Brown's 12(b)(6) motion to dismiss in order to allow discovery as to whether Brown received Mirabella's letters and read them.

But the holding in Grullon—that properly addressing and sending a letter to the official is sufficient to support a plausible claim of deliberate indifference to safety at the pleading stage —does not extend past discovery. See Grullon, 720 F.3d at 140-41; Davis v. Kelly, 160 F.3d 917, 921-22 (2d Cir. 1998) ("After an opportunity for discovery, undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case."). At the summary judgment stage, Mirabella must provide evidence to support his claim that Brown in fact received his letters and failed to take corrective action. See Paschal-Barros v. Santili, No. 3:16-CV-1690 (JCH), 2017 WL 8776959, at *5 (D. Conn. Nov. 30, 2017) ("Without evidence showing that [defendant] actually received and reviewed [plaintiff's communication], no reasonable jury could conclude that [defendant] was aware that [plaintiff] faced a substantial risk of

9

harm"); Braham v. Perelmuter, 3:15-cv-1094 (JCH), 2017 WL 3222532, *13 (D. Conn. Jul. 28, 2017) (rejecting the argument that Grullon applies at the summary judgment stage and holding that the plaintiff "must provide evidence to support his claim that the defendant in fact received the letter [in question]").

Discovery now having closed, Brown has asserted that he did not receive the letters and was not aware of Mirabella's allegations of constitutional violations. Further, although Brown may have been assigned to D Block on the dates in question, he was also assigned to other jobs and shifts at Attica, and, even if he had been assigned to D Block on the days that the Mirabella placed the generically addressed letters into the sergeants' mailbox, at least two other sergeants also had access to that mailbox. The only evidence submitted by Mirabella that might suggest Brown did receive the letters are inadmissible hearsay statements from other inmates.

This Court finds that Brown was able to provide sufficient evidence through discovery to demonstrate that he was not personally involved in the violations at issue, and Mirabella has failed to oppose that evidence. See Cater v. New York, No. 17 CIV. 9032 (RWS), 2018 WL 3093964, at *5 (S.D.N.Y. June 21, 2018) (dismissing claim where there were "no factual allegations to support an inference that the [defendant] was aware of Plaintiff's telephone and email communications to his office"). Accordingly, the claim against him is dismissed.[7]

### IV. CONCLUSION

For the foregoing reasons, Kiener's motion for summary judgment is denied. Brown's motion for summary judgment is granted and the claim against him is dismissed.

---

[7] Because this Court has dismissed the claim against Brown for lack of evidence of his personal involvement, it does not reach Brown's argument as to qualified immunity.

## V. ORDERS

IT HEREBY IS ORDERED that the Motion for Summary Judgment (Docket No. 47) is GRANTED in part and DENIED in part;

FURTHER, that Defendant Brown is dismissed;

FURTHER, that the parties shall re-engage in mediation. The parties must contact their mediator within ten days of the entry date of this order to schedule a mediation session. A mediation session must take place within 45 days of the entry date of this order. The mediator must thereafter file a Mediation Certificate advising this Court on the progress of mediation. If mediation concludes unsuccessfully, this Court will schedule a status conference to discuss trial readiness.

SO ORDERED.

Dated: July 31, 2018
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge